# Richmond

RESERVE LIFE INSURANCE COMPANY, ET AL. v. MARY J. HOSEY.

March 4, 1968.

Record No. 6728.

Present, All the Justices.

S. D. *Roberts Moore* (*Gentry, Locke, Rakes & Moore,* on brief), for appellants.

*William T. Wilson* (*Collins & Wilson,* on brief), for appellee.

BUCHANAN, J., delivered the opinion of the court.

The question in this case is whether a knee injury suffered by Mrs. Mary J. Hosey, sometimes referred to herein as claimant, was an injury by accident arising out of and in the course of her employment by Reserve Life Insurance Company, herein referred to as defendant, so as to be compensable. Code of Virginia, § 65-7, Workmen's Compensation Act.*

---

*§ 65-7. Injury defined.—Unless the context otherwise requires, "injury" and "personal injury" mean only injury by accident, or occupational disease as hereinafter defined, arising out of and in the course of the employment and do not include a disease in any form, except when it results naturally and unavoidably from either of the foregoing causes.

Hearing Commissioner Evans, of the Industrial Commission, found that the evidence failed to disclose an accident arising out of claimant's employment and dismissed her claim. On review by the full Commission, pursuant to Code § 65-93, 1966 Cum. Supp., a majority found that the claimant's injury was by accident arising out of and in the course of her employment, and awarded her weekly payments for periods stated "on account of total incapacity for work". Commissioner Evans dissented. The employer and its insurance carrier have appealed.

The pertinent evidence, which was without contradiction, consisted of the testimony of the claimant and the reports of two doctors. The claimant, Mrs. Hosey, forty-three years old, testified, and the Commission found, that on August 5, 1965, in the course of her employment by defendant, Mrs. Hosey was making a door-to-door survey in the town of Woodstock to find out whether the people were interested in hospital insurance. She was going up the steps to one of the homes and when she made the final step, she said, "it was just like my knee had caught and then it just snapped just like a bone had broken in it" and she felt a sharp, severe pain. These were rock steps that she was ascending, on the corner of a street and "they were just a little bit higher than usual for a step."

This was around 4 p.m. on a very hot day and she had nothing in her hand except some papers as she went up the steps. She did not know, she said, what caused her knee to twist or turn "because it had never happened before." She had worked at all kinds of jobs, "and I have never had nothing like that happen at any other time." She reported the matter that evening to defendant's branch supervisor, who later filled out an accident report.

Mrs. Hosey was first treated by Dr. Jeanette M. Jarman on August 8, 1965, three days after the injury, who put her to bed in a hospital and next day sent her to another hospital in Clifton Forge. Dr. Jarman reported that claimant had severe pain in her knee, which was swollen, and that she believed the cartilage in the knee was ruptured. In a later report she described claimant's injury as "Traumatic synovitis of the left knee with possible tear of medial meniscus."

In answer to questions on a written form as to whether the "accident above referred to" was the only cause of claimant's condition, Dr. Jarman replied, "Yes," and that claimant was not suffering from any other condition "not due to this accident".

Dr. R. P. Hawkins, Jr., to whom claimant was referred by Dr. Jarman, examined claimant in the Clifton Forge hospital on August

9, 1965, and reported that claimant's injury was "Traumatic synovitis of left knee," and made the same answer as Dr. Jarman that the "accident" was the only cause of claimant's condition, and that she was not suffering from "any other disabling condition not due to this accident".

After about a week in the hospital, claimant made several attempts to continue work but eventually had to give it up and an operation was performed on her knee. She was in the hospital for seven weeks on that occasion.

[1] Defendant contends, first, that claimant's injury was not an "injury by accident" as required by Code § 65-7.

In its opinion, by Commissioner Harwood, the Commission stated: "Both Dr. Jarman and Dr. Hawkins, in their reports, causally related the disabling condition to the work activity of ascending the steps in the course of the employment." And, further, "To ascertain the mechanism or cause of injury we look to the medical evidence, and here we find the uncontradicted opinions that the work activity was the producing cause of injury."

Defendant contends that the record does not support these statements. While the doctors' reports do not specifically spell out in so many words that claimant's work activity was the producing cause of the injury, their responses to the questions asked on the forms made it very plain that such was their opinion. Both doctors stated that "the accident" was the only cause of claimant's condition and that they found no other cause. We find nothing to require rejection of the statement in the majority opinion of the Commission that "The mechanism of injury reported by Dr. Jarman and Dr. Hawkins is medically credible."

Both doctors, as noted, found that the claimant's injury consisted of a traumatic synovitis of the left knee. Dr. Hawkins added that "A medial meniscus cannot be excluded." Dr. Jarman added "with possible tear of medial meniscus." These terms indicate that the knee injury was caused by external force.

Whether an injury is the result of an accident does not depend on whether the same injury might happen to others. We have in a number of cases defined the word "accident". As long ago as 1927, in *Newsoms* v. *Commercial Casualty Ins., Co.*, 147 Va. 471, 474, 137 S.E. 456, 457, we accepted this definition given by Vance on Insurance: " 'The definition of accident generally assented to is an event happening without any human agency, or, if happening

through human agency, an event which, under the circumstances, is unusual and not expected by the person to whom it happens.' "

That definition was approved in *Big Jack Overall Co.* v. *Bray*, 161 Va. 446, 451-2, 171 S.E. 686, 690, in which a woman apparently in normal health attempted to lift a bundle of clothes from a low truck and injured her back. She said something "tore in two in my back like it snapped in two." This was held to be an "injury by accident."

The same definition was approved in *Hall's Bakery* v. *Kendrick*, 176 Va. 346, 349, 11 S.E.2d 582, 583, with this addition: " 'Where the effect was not the natural and probable consequence of the means employed, and was not intended or designed, the injury resulting was produced by accidental means.' "

The same definition with the addition was used in *Derby* v. *Swift & Co.*, 188 Va. 336, 342, 49 S.E.2d 417, 421, in which it was held that a hernia suffered by an employee while lifting a loading table was an injury by accident. It was said: "To constitute an injury by accident it is not necessary that there must be a 'fall, slip or other fortuitous circumstance'."

In *Virginia Electric, Etc., Co.* v. *Quann*, 197 Va. 9, 12, 87 S.E.2d 624, 626, the Vance definition was again approved and it was said that this meaning of the phrase "injury by accident" has been approved or cited with approval in eleven Virginia cases, which are listed on page 13 of 197 Va. and page 626 of 87 S.E.2d.

The evidence measured by these rules establishes that the injury suffered by the claimant resulted from an accident.

[2] Defendant admits that if there was an injury by accident it occurred in the course of claimant's employment, but it contends, next, that it did not "arise out of the employment."

In *Conner* v. *Bragg*, 203 Va. 204, 208, 123 S.E.2d 393, 396, we said that the expressions " 'arising out of' " and " 'in the course of' " are used (in Code § 65-7) conjunctively and are not synonymous; that both conditions must be present before compensation can be awarded, and that the words " 'arising out of' " have been construed by us to refer to the "origin or cause of the injury". We there again approved the "definition and test" stated in *In re McNicol*, 215 Mass. 497, 102 N.E. 697, L.R.A. 1916A 306, that an injury arises out of the employment "when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury."

In the *Conner* case, *supra,* compensation was denied because, as stated in *Immer and Company* v. *Brosnahan,* 207 Va. 720, 726, 152 S.E.2d 254, 258, "The employee was injured in a place where he was not reasonably expected to be while engaged in an activity not incidental to his employment."

And, as further stated in the latter case, "the court [in *Conner*] in no way intended to depart from it unbroken line of holdings that a showing of causal connection is sufficient to establish that an injury arises out of the employment." 207 Va. at 726, 152 S.E.2d at 258.

We said in *Southern Motor Lines* v. *Alvis,* 200 Va. 168, 170, 171, 104 S.E.2d 735, 738: "A risk is incidental to the employment when it belongs to or is connected with what the employee has to do in fulfilling his contract of service." And, further:

"It is generally held that the phrase 'arising out of' the employment should receive a liberal construction in order to effectuate the humane and beneficent purposes of the Act. * *"

In the present case the Commission found that Mrs. Hosey was disabled "as the result of a left knee injury by accident arising out of and in the course of the employment". This finding may not be disturbed if it be sustained by credible evidence. Code 1950, § 65-94; *Island Creek Coal Co.* v. *Fletcher,* 201 Va. 645, 648, 112 S.E.2d 833, 835.

The evidence presented was credible, was not in fact contradicted, and was sufficient to sustain the award. The award is therefore

*Affirmed.*