## Richmond

INSURANCE MANAGEMENT CORPORATION OF
TIDEWATER/BALDWIN BROTHERS & TAYLOR, AND
CONTINENTAL INSURANCE COMPANY

v.

### EDNA PUGH DANIELS

September 11, 1981.

Record No. 801000.

Present: All the Justices.

*Charles F. Midkiff (Christian, Barton, Epps, Brent & Chappell*, on briefs), for appellants.

*Palmer S. Rutherford, Jr. (Eley, Rutherford & Leafe*, on brief), for appellee.

HARRISON, J., delivered the opinion of the Court.

In this case we determine whether the Industrial Commission of Virginia erred in finding that certain medical treatments accorded to and surgery performed on Edna Pugh Daniels, claimant, constituted necessary medical attention under Code § 65.1-88.

On January 27, 1976, Daniels, in the course of her employment, sprained her back while bending over to pick up forms from the bottom drawer of a filing cabinet. Compensation was awarded on February 8, 1976, and terminated upon her return to work on March 1, 1976. Subsequently Daniels was hospitalized from August 29, 1979, to November 9, 1979. During this period a plastic surgeon removed fatty tissue from the upper part of her body. The cost of the hospitalization and surgery totaled $19,305.13. Employer and its carrier refused to pay this amount, claiming the surgery did not constitute necessary medical attention and that they had not received proper notice of the proposed treatment. The Commission, with one dissent, affirmed the Hearing Commissioner's opinion that carrier had received notice of the pending treatment and that carrier was responsible for the cost of the treatment. We then granted this appeal.

It would needlessly encumber this opinion to review in detail claimant's numerous visits to doctors and hospitals, her treatments, and the medication prescribed for her. However, certain details of her medical history are pertinent to our opinion.

In 1974, Daniels, who was then 58 years old, had a weight problem that had plagued her through the years. Dr. Gervas S. Taylor, Jr., an orthopedic surgeon, in a letter written in August 1974 to Dr. Donald Faulkner said that "a description of [Mrs. Daniels] probably would be embarrassing [because of her obesity]." The letter went on to describe the number of medical problems suffered by the claimant with Dr. Taylor adding, "I suppose this list could go on a bit further."

Dr. Faulkner had treated Daniels over the years for various illnesses. His notes reflecting her medical history were introduced in evidence. They show approximately thirty-five office visits between February 1974 and March 1980. The record shows that on February 22, 1974, Daniels weighed 231½ pounds. By December 3, 1974, her weight had increased to 247½ pounds. In August 1975, it was reported to be 253½ pounds, with Dr. Faulkner noting "[s]he eats too many starches." As the result of her job-related back injury in 1976, claimant was hospitalized for a week in February 1976. One year later, Dr. Faulkner stated in his notes: "She

[claimant] is still markedly obese." Her weight had dropped to 240¾ pounds by December 1977, and Dr. Faulkner recommended she "continue to lose weight."

Claimant thereafter failed to continue her weight loss. In June 1978 she weighed 244½ pounds, and by October of that year she weighed 258 pounds. Her weight increased to 265¾ pounds by March 1979. It was noted that on August 27, 1979, just prior to her hospitalization for the challenged treatment, Daniels weighed 276 pounds.

As early as October 1975, Dr. Faulkner found claimant's medical complaints to be related to her weight. He said: "No doubt her [arthritis] attack is prolonged due to the strain on these joints all of the time from her being so markedly overweight." The doctor's notes reflect his concern with Daniels' obesity and her unwillingness to diet and lose weight. He observed: "We have always had a problem of getting her to stay on a diet." Daniels had lost "between 30 and 40 pounds in late 1970 and 71" by dieting in the hospital and at home, but her failure to follow Dr. Faulkner's prescribed diets prevented any permanent weight loss.

Dr. Taylor also was concerned about claimant's failure to loose weight and the effect it had on her medical problems. He testified: "Every [sic] since I had met Mrs. Daniels I had mentioned to her that one of the easiest and simplest ways for her to lose weight was to have it cut off." In August 1979, Dr. Faulkner noted that "Dr. Taylor has suggested that a lot of [Daniels'] obese tissue be removed by a plastic surgeon or by dieting and being placed in a body cast."

Daniels was hospitalized on August 29, 1979. She was placed on a 600-calorie diet with physiotherapy and lost approximately twenty pounds prior to October 17, 1979.

On October 17, claimant underwent surgery for "morbid obesity." Dr. G. Patrick Maxwell, a plastic surgeon, removed eight to ten pounds of fatty tissue in her upper arms, breasts, and scapula regions on the left and right sides. Her hospitalization was prolonged due to problems following the surgery.* When asked what effect the surgery had on the claimant's back, Dr. Taylor replied: "None so far, this is just one step in a number of steps we've

---

* Daniels' extensive stay in Norfolk General Hospital was the subject of investigation by the hospital's Utilization Review Committee.

planned. If followed through, the next step would be to do the [buttocks] area."

The employer and its carrier denied claimant's claim for medical benefits upon the ground that the medical treatment prescribed was not necessary and therefore was beyond the scope of the employer's obligation under Code § 65.1-88. The majority of the Commission conceded that "the treatment rendered may . . . have been somewhat unusual," but found that the claimant met the requisite burden of proof and held the carrier responsible for the treatment. The dissenting Commissioner found that the surgical removal of the exogenous fatty tissue from the upper part of claimant's body by the plastic surgeon was not necessary treatment and that it was not rendered as a result of the back injury sustained by claimant on January 27, 1976.

The carrier requested Dr. Thomas Beath, an orthopedic surgeon, to review the medical reports in Daniels' case. His conclusion was: "After a lengthy review of the medical records, I am of the opinion that the admission of Ms. Daniels to the hospital for weight loss along with plastic surgery are [*sic*] not associated with or caused by the 1976 back strain." The record reveals that Daniels suffered from a severe obesity problem over a period of years and that her obesity caused or greatly contributed to numerous conditions and illnesses existing prior to the January 1976 accident. Dr. Taylor's letter of August 22, 1974, clearly shows that claimant's weight problem existed before the accident. The record shows he had considered surgery for removal of the fatty tissue prior to the accident. The plastic surgeon who excised the fat from Daniels stated that it was thought the surgery would "serve as an incentive [for Daniels] to lose the severe amount of weight she carries on her abdomen and buttocks." Providing surgery as an incentive to diet is not the responsibility of a compensation carrier.

The claimant argues that a finding of fact made by the Commission based on evidence deemed credible by the Commission is conclusive and binds this court and that in the absence of fraud its finding is not subjective to review. She cites *Rogers* v. *Williams,* 196 Va. 39, 82 S.E.2d 601 (1954). Daniels claims that it is inappropriate for this court to review the necessity of the treatment. We disagree.

█ It was claimant's responsibility to prove that, considering her industrial injury, her claim qualified as "other necessary medical attention" under the meaning of Code § 65.1-88. *See Warren*

*Trucking Co., Inc.* v. *Chandler,* 221 Va. 1108, 277 S.E.2d 488 (1981). It was the unanimous opinion of all physicians examining or treating Daniels that she needed to lose weight. She had been instructed years prior to her injury in 1976 to maintain a prescribed diet. These instructions were given repeatedly up until the time she was operated on for removal of the fat. The claimant did not testify at the hearing and at no time has she claimed that she was physically, mentally, or psychologically unable to follow a prescribed diet. Indeed, Daniel's own medical records show that she possessed the ability to lose weight by dieting. Claimant has shown no legal excuse or medical reason for failing to follow her doctors' instructions and therefore cannot claim medical benefits for a continuing physical problem of her own creation. *See Stump* v. *Norfolk Shipbuilding Corp.,* 187 Va. 932, 48 S.E.2d 209 (1948).

Claimant's position is that the burden should be placed on the employer to provide the expenses incident to the surgical removal of fat notwithstanding her unwillingness to reduce her weight by dieting or other conservative methods. If this argument is valid and carried to its logical conclusion, the carrier would have been responsible had the doctors decided on any of a number of exotic weight-loss treatments.

Counsel for claimant correctly states that Code § 65.1-88 requires that necessary surgical and hospital services and supplies be furnished. However, this does not give the patient's attending physician unbridled authority or discretion. The services which an employer has to furnish under the Workmen's Compensation Act are necessary services incident to the treatment of an injury sustained in a compensable accident. While the doctors who attended Daniels concurred in their belief that surgery to remove excess fat from her body was necessary, the record is devoid of credible evidence that such an operation was causally related to the back sprain which the claimant suffered on January 27, 1976. The claimant's hospitalization between August 29, 1979, and November 9, 1979, was necessitated by her obesity.

For the reason that the evidence in the case is insufficient to show that the surgical procedure and other treatment involved here were causally related to the industrial accident that occurred in 1976, we will reverse the judgment of the Commission and enter final judgment for the appellants.

*Reversed and final judgment.*