**Richmond**

BOARD OF SUPERVISORS OF HENRICO COUNTY, et al.

v.

JOHNNIE O. MARTIN

No. 1007-85

Decided September 16, 1986

COUNSEL

Roger L. Williams (Sands, Anderson, Marks & Miller, on brief), for appellants.

Gregory S. Hooe, for appellee.

OPINION

**MOON, J.** — Lumbermens Mutual Casualty Company and the Board of Supervisors of Henrico County appeal from an Industrial Commission decision in favor of Johnnie O. Martin awarding him benefits based upon a change of condition of a compensable injury of February 8, 1977. The Commission decided that Martin aggravated the February 8, 1977 injury in an incident on September 4, 1981. Lumbermens and Henrico claim that the 1981 accident

constituted a second and separate injury for which Martin should have filed a timely claim but did not, and that he is, therefore, barred from receiving benefits by the statute of limitations. Code § 65.1-87. We agree.

■■■ If Martin sustained a second and separate compensable injury on September 4, 1981, he cannot be compensated for it under the 1977 claim. This result would follow even if the second injury was an aggravation of the earlier injury. The Supreme Court stated in *Leonard v. Arnold*, 218 Va. 210, 237 S.E.2d 97 (1977):

> The "change in condition" which justifies reopening and modification is ordinarily a change, for better or worse, in claimant's physical condition. This change may take such form as progression, deterioration, or aggravation of the compensable condition. . . .
>
> * * *
>
> When it is said that change in condition includes aggravation of the first injury, this must be understood to include aggravation only under circumstances that would not amount to a new compensable injury.

*Id.* at 214, 237 S.E.2d at 99 (quoting 3 A. Larson, Workmen's Compensation Law § 81.31 (1976)). The Court further stated:

> When a primary injury under the Workmen's Compensation Act is shown to have arisen out of the course of employment, every natural consequence that flows from the injury is compensable if it is a direct and natural result of a primary injury. *See Womack, Inc. v. Ellis*, 209 Va. 588, 591, 166 S.E.2d 265, 268 (1969). But this rule, which was strongly relied upon in the Industrial Commission's opinion, has no application to a new and separate accidental injury. *See Womack*, 209 Va. at 593, 166 S.E.2d at 269.

*Leonard*, 218 Va. at 214, 237 S.E.2d at 99. Therefore, "[a]n application for compensation based on a 'change in condition' cannot be used as a substitute for an original hearing on a new and separate accident." *Id.* at 215, 237 S.E.2d at 100 (citing *Allen v. Motley Construction Co.*, 160 Va. 875, 880, 170 S.E. 412, 414

(1933))).

■ The question then is whether Martin sustained a new compensable injury in 1981. An injury by accident is a "sudden, obvious mechanical or structural change" in the body. *Holly Farms v. Yancey*, 228 Va. 337, 340, 321 S.E.2d 298, 300 (1984). "[A]n injury is compensable if it appears 'to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.' " *Immer & Co. v. Brosnahan*, 207 Va. 720, 726, 152 S.E.2d 254, 259 (1967) (quoting *Connor v. Bragg*, 203 Va. 204, 123 S.E.2d 393 (1962)). Martin was working as a Henrico County fireman at the time of the 1981 injury. The station floor had been soaped down in preparation for waxing and was very slippery. Martin slipped on the floor and ruptured the anterior cruciate ligament of his right knee.

The Commission's finding of fact that the 1981 injury was not a new accident is binding on appeal if supported by credible evidence. Code § 65.1-98. Martin injured his knee in the compensable 1977 accident. Lumbermens Mutual Casualty Company, Henrico County's insurer in 1977, paid benefits, the last being entered August 18, 1981. The specific injury in 1977 was a tear to the posterior horn of the medial meniscus of his right knee. There is no question that Martin continued to have problems with that knee and it was in a weakened condition on September 4, 1981. In fact, on January 27, 1981, prior to the September, 1981 fall, Dr. Caspari performed an arthroscopy of the right knee. However, at that time he observed that the anterior cruciate ligament, which was injured in the September 4, 1981 accident, was normal. There is no evidence that Martin had reinjured the posterior horn of the medial meniscus of his right knee (his 1977 injury) after he slipped in 1981.

When this case was originally heard, all parties stipulated that the 1981 injury constituted another accident. In his opening remarks, Martin's attorney stated: "Mr. Martin's claim is that he suffered a compensable injury in 1981, September 4th of that year." Such evidence as there is concerning the facts of the accident unequivocally relate the slippery condition of the floor to the accident. Martin himself testified: "All right I had slipped at the station while performing duties of waxing floors while on duty and that resulted in more time lost and eventual surgery done in February." Paul Carlson, risk manager for Henrico, at least three

times in his testimony referred to the 1981 injury as a "slip and fall" at the firehouse. The employer's first report of the accident filed on September 9, 1981, contains the following description of the accident of September 4, 1981: "Employee was . . . stripping old wax from floor. A soapy solution was applied to the floor. Employee was advancing forward taking very small steps. His feet began to slip resulting in a horizontal spread. Employee scrambled for balance and injured [his] knee in the process."[1]

Thomas Yates was listed as a witness on that report and testified on behalf of Martin. Yates testified how he and Martin were stripping the floor to wax it as they did each Friday, when he was interrupted by Henrico County's counsel:

Mr. Smith: [Counsel for Henrico] If the only thing this gentleman is going to testify to is he saw the accident we'll stipulate to it.

Mr. Hooe: [Martin's counsel] During regular business hours—

Mr. Smith: During regular business hours, during the course of his employment, during the scope of his employments. [sic].

Mr. Hooe: Okay, and arising out of his employment.

Mr. Smith: Arising out of.

Mr. Hooe: And more severe than the 1977. . . .

Therefore, as the evidence summarized above indicates, Martin's 1981 injury was a distinct and separate injury, resulting from a slip on a soapy floor. However, the Commission, in making its decision, relied upon the September 4, 1981 attending physician's report of Dr. Richard Casperi, who reported that Martin "fell on (R) knee today when [it] gave way on him." However, Dr. Caspari's letters of September 13, 1984, and November 21, 1984, and his deposition were also part of the file. In the Septem-

---

[1] We do not consider the first report of the accident to be evidence, but refer to it because as a part of the record it shows that there was never any question at the hearing but that a new accident arising out of the employment was being claimed.

ber 13, 1984 letter to the insurance company he stated:

> Mr. Martin's ACL reconstruction was necessary because of his injury in 1981. His current problem is a direct result of the 1981 injury to his right knee while working at his job.

In the November 21, 1984 letter to Martin's attorney explaining the letter of September 13, he stated: "Indeed his anterior cruciate ligament did completely rupture in 1981, however, this injury was an aggravation of the injury he sustained in 1977."

■ In Dr. Caspari's deposition, he explained that Martin's problems really began in 1973 with a medial meniscectomy. The 1977 injury further weakened the knee so that in 1981 he was more susceptible to another knee injury. A fair reading of the deposition would require us to find that Dr. Caspari was saying that the 1977 injury weakened the knee and that weakness contributed to cause the 1981 injury. However, the fact that the 1977 injury contributed to the 1981 injury does not mean that the 1981 injury was not also the result of another accident. Furthermore, a doctor's history taken from claimant or others is not evidence upon which the Commission should rely to determine how the accident occurred, because it is impermissible hearsay if used for that purpose. The history is admissible but only to explain the basis of the doctor's opinion.

> It is permissible for an expert to give reasons for his opinion, but if he testifies to information received from other sources, such information may be considered only for the purpose of determining what weight should be given the expert's conclusion.

*Foley v. Harris*, 223 Va. 20, 29, 286 S.E.2d 186, 191 (1982).

Where appropriate, it may be used to impeach or corroborate the claimant. However, claimant cannot rely upon it to impeach his stipulation or unequivocal testimony at trial. *See Massie v. Firmstone*, 134 Va. 450, 462, 114 S.E. 652, 656 (1922).

We are not holding that reliable hearsay evidence, permitted under Rule 1 of the Rules of the Industrial Commission, is not appropriate where its use comports with the intent of the rule; but we are holding that on the facts of this case the doctor's report

was impermissibly used by the Commission as evidence of a fact that the report was not offered in evidence to prove. Furthermore, the doctor's subsequent letters and deposition made clear his testimony in which the doctor in no way negated the slippery floor as a factor in the fall and resulting injury.

Accepting Dr. Caspari's conclusion that the 1981 injury aggravated the 1977 injury, Martin still suffered a compensable new injury for which he should have filed a claim. *Leonard*, 218 Va. at 215, 237 S.E.2d at 100. Dr. Caspari's testimony does not conflict with the evidence of a new injury. There is no question but that the knee gave way; but upon this evidence it is uncontradicted that it gave way in some part because Mr. Martin had "slipped." The slip put pressure on the weak knee, resulting in a previously undamaged portion of the knee, the anterior cruciate ligament, being damaged. Thus there was a new accident that aggravated an old injury.

The problem in this case is that Mr. Martin sustained two compensable injuries for each of which he was entitled to compensation had he followed proper statutory procedures. At the time of the 1977 accident, Lumbermens Mutual Casualty Company insured the Board of Supervisors of Henrico County. However, Henrico County was self-insured at the time of the September 4, 1981, accident. Martin, after the 1981 accident, mistakenly acted upon the assumption that Henrico County was protecting his interests and failed to anticipate a statute of limitations problem. Therefore, he did not file his application for a hearing with the Industrial Commission within two years of September 4, 1981. He waited until May 10, 1984, and, thus, his claim was barred by the provisions of Code § 65.1-87. The Industrial Commission decided that the September 4, 1981, injury was a "continuing consequence" of the February 8, 1977, injury and that Martin could be compensated for the February 8, 1977, injury because he had last received payments on December 3, 1981, less than thirty-six months before he filed his application on May 10, 1984. Thus, under Code § 65.1-99, the Commission was able to hold that Martin was entitled to compensation from the 1977 accident.

Had Martin been merely standing on the floor without any foreign substance affecting him in any way and his knee gave way, this incident might be characterized as an idiopathic fall and, thus, not an accident within the contemplation of the Workers'

Compensation Act. *Winegar v. International Telephone & Telegraph*, 1 Va. App. 260, 263, 337 S.E.2d 760, 762 (1986).

However, we must resist Martin's invitation for us to construe his 1981 accident as an idiopathic fall. Such a legal holding would help Martin, but it would not help other claimants. It is true that the Workers' Compensation Law should be construed liberally in favor of the worker, *Hopson v. Hungerford Coal Co.*, 187 Va. 299, 305, 46 S.E.2d 392, 395 (1948), but it is the law that should be construed liberally, not the facts. If, on these facts, we should hold the 1981 fall to be idiopathic, we would be bound to so hold in other cases. Such a decision would not only reverse prior case law but would cause a great number of claimants who are predisposed to injury and suffer otherwise compensable claims to be barred from recovery because we changed the law in this case to assist Martin, who is denied recovery only because he failed to file a timely claim. *See Russell Loungewear v. Gray*, 2 Va. App. 90, 93, 341 S.E.2d 824, 825 (1986).

■ The Commission also found that Martin failed to prove his claim that the Henrico Board of Supervisors should be estopped from asserting the statute of limitations to bar his 1981 claim. The Commission's findings of fact are binding on appeal where supported by credible evidence. Code § 65.1-98. Although Martin testified that he was misled by Henrico's handling of the claim, there was other evidence that negated a finding of fraud on the part of Henrico so as to estop Henrico from pleading the statute of limitations. The record shows that the claim representative wrote to Martin on December 13, 1982, and suggested that Martin determine for himself details concerning his claim. The Commission found that although the claim representative may not have been informed about the applicable law, his representations and actions did not constitute fraud. *See American Mutual Insurance Co. v. Hamilton*, 145 Va. 391, 405, 135 S.E. 21, 25 (1926).

Therefore, the judgment of the Industrial Commission is reversed and the application is ordered dismissed.

*Reversed and dismissed.*

Koontz, C.J., concurred.

Benton, J., dissenting.

We do not sit to examine the evidence and make findings of fact, nor do we sit to revise the Commission's findings of fact when they differ from those we might have made. *See Caskey v. Dan River Mills, Inc.*, 225 Va. 405, 411, 302 S.E.2d 507, 510-11 (1983). Our consideration of cases appealed from the Commission is circumscribed by the established rule that the Commission's findings of fact are conclusive and binding on us when there is credible evidence in support of such findings. Code § 65.1-98; *Celanese Fibers Co. v. Johnson*, 229 Va. 117, 120-21, 326 S.E.2d 687, 690 (1985); *Insurance Management Corp. v. Daniels*, 222 Va. 434, 438-39, 281 S.E.2d 847, 849 (1981); *Crisp v. Brown's Tysons Corner Dodge, Inc.*, 1 Va. App. 503, 504, 339 S.E.2d 916, 916 (1986); *see McGregor v. Crystal Food Corp.*, 1 Va. App. 507, 509, 339 S.E.2d 917, 918-19 (1986).

Under the holding in *Leonard v. Arnold*, 218 Va. 210, 237 S.E.2d 97 (1977) the factual issue before the Commission was whether Martin's injury on September 4 was a direct and natural result of his compensable injury of February 8, 1977 or whether instead it was a new and separate accidental injury. *Id.* at 214, 237 S.E.2d at 99. Both the deputy commissioner who heard the evidence and the full Commission on review resolved this factual issue and found that the September 4 incident was an aggravation of Martin's prior accidental injury. The majority opinion concludes that *no* credible evidence supports the Commission's finding of fact. The majority opinion also makes its own, contrary finding that the incident of September 4 was a separate and compensable accidental injury. I disagree with the majority's conclusions.

The majority opinion concedes that "[t]here is no question but that the knee gave way;" however, it then asserts that "it is uncontradicted that it gave way in some part because Mr. Martin had 'slipped.'" The latter assertion constitutes fact-finding by the majority. Dr. Caspari, whose letters, reports and evidence were based upon his examination of Martin and his inquiry as to the cause of the accident, reported that the claimant's knee "gave away posterolaterally." The medical evidence provides a credible basis of support for the Commission's conclusion that the Septem-

ber 4, 1981 incident was a natural and direct consequence of Martin's earlier, compensable accidental injury. The deputy commissioner described her view of the evidence this way:

A careful and exhaustive study of the testimony and the medical records leaves little doubt that the claimant has a bad right knee and that every time it gives way it does more damage to the knee. Dr. Caspari in his deposition taken January 23, 1985 sets out in great detail the continuing problems the claimant has had with his right knee over the years. Commencing in 1973 and continuing up through the present time, Martin has been unable to go more than a few months without seeking treatment for his knee. Dr. Caspari described the claimant's condition as a "whole progression of problems with the knee, each interrelated." He further went on to explain that while there might have been some initial confusion that the September 1981 incident was a separate injury, in actuality it was an aggravation of his 1977 injury. The stabilizing structures in the knee, the subject of the claimant's problems, work in concert and thus if one is injured or removed (as in the claimant's case) the others become so overloaded that what might be a mild injury in a healthy knee causes a tear in a overloaded knee. And once this occurs there is a steady down hill course of further stretching out of the few remaining stabilizing structures thus causing a whole progression of problems with the knee, each interrelated.

The full Commission similarly viewed the medical evidence:

We have carefully reviewed the record in this case, including the medical reports and the deposition testimony of Richard B. Caspari, M.D., orthopedic surgeon. We note specifically that the claimant was seen on September 4, 1981 by Dr. Caspari, who submitted an Attending Physician's Report which stated that the claimant "fell on (R) knee today and [it] gave way on him." Dr. Caspari diagnosed a strain and also stated that x-rays taken of the claimant's knee were interpreted to indicate that there was no change in the claimant's knee. This physician performed an arthroscopic anterior cruciate ligament reconstruction of the right knee on February 28, 1984. Although there is evidence in the medical

records that, as contended by defendant Lumbermen's, the September 4, 1981 incident in the employment brought on yet another flare-up of knee complaints, we find, nevertheless, that the claimant's ensuing condition was not the result of a new industrial accident but that it was a continuing consequence of the February 8, 1977 industrial accident and that it is, therefore, compensable as such.

The majority opinion's finding that Dr. Caspari's testimony was not in conflict with the evidence of a new "injury" does not mean that the evidence did not support the Commission's findings. Moreover, I do not understand the majority opinion to state that Dr. Caspari's evidence was not credible. The resolution of the medical evidence is left to the Commission, not us. Our review requires only that we determine whether this evidence was credible in support of the Commission's findings.

Furthermore, the "uncontradicted" evidence on which the majority opinion relies is innocuous. Neither Martin's nor the risk manager's testimony indicates that the slippery floor *caused* the fall; nor is there any testimony that the knee "gave way in some part because Mr. Martin 'slipped'," as the majority opinion asserts. The majority opinion engages further in speculation and fact-finding when it finds that "[t]he slip put pressure on the weak knee." These are findings that the Commission could have made if it had taken a different view of the evidence, but it did not.

The majority opinion also asserts that there was a "stipulation" that the incident of September 4 constituted a separate industrial accident. What the majority opinion characterizes as a "stipulation," however, was nothing more than counsel's theory of the claim, albeit an incorrect theory that would not serve Martin's interests. There was no stipulation of issues of fact. Unlike the practice in civil cases, the Rules of the Industrial Commission provide:

[T]he Commission is not bound by statutory or common law rules of pleading or evidence, nor by technical rules of practice, but will conduct such hearings and make such investigations into the questions at issue in such manner as in its judgment are held adapted to ascertain and determine expeditiously and accurately the substantial rights of the par-

ties and to carry out the spirit of the Workers' Compensation Act . . . .

Rule 1(A), Rules of the Industrial Commission. Rule 13(B) provides that an employee's change-in-condition application must "state the change in condition relied upon." Martin's handwritten letter to the Commission, dated May 10, 1984, states: "This letter is to inform you that I have a pending claim on an old injury." Contrary to the majority opinion's assertion by reference to the first report of accident, the issue in the hearing before the deputy commissioner was not solely whether there was a new accident on September 4. The deputy commissioner opened the hearing by stating: "This matter comes before us on the claimant's application filed May 11th, 1984 in which he alleges, I believe, a change in condition." Moreover, counsel for the appellants vigorously cross-examined Martin and justified his injury to pre-1981 events this way:

> The relevancy, if Your Honor pleases, is that this man is claiming he's disabled from a slip and a fall in September, that he was not disabled but three or five days. He has injuries and surgery back starting in 1974 and our whole plan here is, if Your Honor pleases, is to show that the man has had a bad knee, and that it was not stable and even Dr. Caspari said he had a bad knee and it was a continuing process and I think we're entitled to provide the Commission with the full background.
>
> * * *
>
> In 1976 he had a injury and had surgery. That's what I—I want to bring out to coincide with Dr. Caspari's reports that the man had a bad knee and it was getting progressively worse and he couldn't say what—

The appellants certainly had adequate notice of the import of Martin's claim. *See Oak Hill Nursing Home, Inc. v. Back*, 221 Va. 411, 415-18, 270 S.E.2d 723, 725-27 (1980). Thus the majority opinion's reliance on the employer's first report of accident in support of its "stipulation" theory is simply unwarranted.

Furthermore, I believe that the Commission did not err in relying upon the medical evidence and Martin's account of the incident as reported to Dr. Caspari. Rule 1(A) permits the use of

hearsay evidence and does not compel the Commission to adopt the strict view espoused by the majority opinion.

The medical evidence in this record shows that Martin was treated on many occasions by Dr. Caspari prior to the September 1981 incident because of problems with his right knee which resulted from the February 8, 1977, compensable accident. He was treated by Dr. Caspari on December 5, 1980, and January 12, 1981, because of pain, popping and "giving away in the knee." On March 9, 1981, Dr. Caspari wrote to the employer, stating: "[T]oday, he continues to have swelling in the knee and occasional popping and giving away of the knee." On June 26, 1981, Dr. Caspari reported the worsening condition of Martin's knee. Dr. Caspari's report of September 4, 1981, states that Martin's fall was caused by his knee giving way. In view of Martin's report of the incident to Dr. Caspari, the testimony of Dr. Caspari regarding causation, and the undisputed prior instances in which Martin's knee "gave away," I believe that the Commission's determination that the fall was caused by the knee giving away rather than by a slippery floor was a finding of fact supported by credible evidence and, thus, conclusive on appeal. *See Reserve Life Insurance Co. v. Hosey*, 208 Va. 568, 159 S.E.2d 633 (1968).