COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Willis and Bumgardner
Argued at Richmond, Virginia


E.I. DuPONT De NEMOURS AND COMPANY

                                    MEMORANDUM OPINION* BY
v.    Record No. 2648-00-2         JUDGE JERE M. H. WILLIS, JR.
                                           JULY 3, 2001
BRENDA G. EGGLESTON


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Joy C. Fuhr (Stephen D. Busch; Kimberly R.
            Hillman; McGuireWoods, LLP, on briefs), for
            appellant.

            Wesley G. Marshall for appellee.


     On appeal from a decision of the Virginia Workers'

Compensation Commission, E.I. DuPont De Nemours and Company

(DuPont) contends that the commission erred in refusing to

charge against the 500 week maximum limits of her carpal tunnel

syndrome and right shoulder injury awards the number of weeks

that Brenda G. Eggleston received benefits under her August 25,

1994 award for disability resulting from gamekeeper's thumb.  On

cross-appeal, Eggleston contends that the commission erred in

terminating her gamekeeper's thumb award, thereby reducing her

temporary total disability compensation rate.  We affirm the

commission's decision.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

## I. BACKGROUND

Eggleston sustained three separate injuries while working for DuPont and received three awards. She was awarded benefits for bilateral carpal tunnel syndrome with a communication date of September 28, 1989. Temporary total benefits were paid her at the rate of $306.18 for September 19, 1990 through October 30, 1990. Permanent partial benefits were paid from January 30, 1992 through July 29, 1992.

Eggleston's second injury, sustained on November 28, 1990, was to her right shoulder. She received temporary total benefits at the rate of $293.90 from January 12, 1991 through January 14, 1991, and from September 27, 1991 through November 2, 1992.

Eggleston's third award was for bilateral gamekeeper's thumb with a communication date of March 9, 1993. She received temporary partial benefits at the rate of $74.35 from June 13, 1993 to November 30, 1993, based upon an average weekly wage of $557.53.

On December 8, 1993, shortly after benefits ended for the third award, Eggleston filed a change-in-condition application. She alleged that she was fired while doing light duty work. The deputy commissioner found that she was disabled from all three conditions and entered an award for ongoing temporary total disability benefits beginning August 25, 1994, using the average

weekly wage from the gamekeeper's thumb disability of March 9, 1993.

On February 3, 1999, DuPont filed a change-in-condition application, with an attached memorandum, seeking "to reduce the amount of temporary total disability benefits being paid to [Eggleston] and to award [DuPont] a credit against future payments." DuPont stated that it filed the application (1) to terminate Eggleston's award for bilateral gamekeeper's thumb, (2) to reduce the amount of temporary total disability benefits based upon the resolution of the gamekeeper's thumb, (3) to receive credit against future temporary total disability benefits paid Eggleston based on overpayment of benefits from October 22, 1997, the date the gamekeeper's thumb resolved, to February 17, 1999, the date DuPont reduced the amount of benefits pursuant to its application, and (4) to receive credit against future temporary total disability benefits paid Eggleston based upon time worked by her at light duty at her normal pre-injury wages. DuPont also contended that Eggleston's maximum entitlement to benefits for each individual injury should be reduced by the number of weeks that she received benefits under the August 25, 1994 award.

The deputy commissioner held that DuPont was entitled to a reduction of the temporary total disability award due to resolution of Eggleston's gamekeeper's thumb. He further held

that DuPont's payments under the August 25, 1994 award did not entitle it to a reduction in Eggleston's potential terms of compensation relating to her remaining disabilities.  Finding that the August 25, 1994 award, though reciting disability from all three conditions, was tied to the gamekeeper's thumb disability, he noted that the Workers' Compensation Act "does not provide for counting simultaneous payments, resulting from separate injuries, as more than one week of disability benefits against the maximum allowable period of 500 weeks."

The full commission affirmed.

## II.  CREDIT AGAINST 500 WEEK MAXIMUM

DuPont contends that it is entitled to credit the number of weeks that Eggleston received benefits under her August 25, 1994 award against the 500 week maximum compensation terms relating to the carpal tunnel syndrome award and the right shoulder injury award.  We disagree.

> "[T]he right to compensation under the workmen's compensation law is granted by statute, and in giving the right the legislature had full power to prescribe the time and manner of its exercise.  When the legislature has spoken plainly it is not the function of courts to change or amend its enactments under the guise of construing them.  The province of construction lies wholly within the domain of ambiguity, and that which is plain needs no interpretation."

- 4 -

<u>Dan River, Inc. v. Adkins</u>, 3 Va. App. 320, 328, 349 S.E.2d 667, 671 (1986) (quoting <u>Winston v. City of Richmond</u>, 196 Va. 403, 407-08, 83 S.E.2d 728, 731 (1954)).

Code § 65.2-518 provides:

> The total compensation payable under this title shall in no case exceed the result obtained by multiplying the average weekly wage of the Commonwealth as defined in § 65.2-500 for the applicable year by 500, except in cases of total permanent incapacity as defined in § 65.2-503 and in cases of permanent disability under subdivision A 4 of § 65.2-504 and death from coal worker's pneumoconiosis under § 65.2-513.

Code § 65.2-503(E)(2) states:

> Where compensation pursuant to this section is paid simultaneously with payments for partial incapacity pursuant to § 65.2-502, each combined payment shall count as two weeks against the total maximum allowable period of 500 weeks.

The Act makes no other provision for counting single payments, resulting from separate disabling injuries, against more than one term of eligibility. Furthermore, the Act "should be construed liberally in favor of the worker." <u>Bd. of Supervisors v. Martin</u>, 3 Va. App. 139, 146, 348 S.E.2d 540, 543 (1986) (citation omitted). Therefore, we agree with the commission and hold that DuPont is not entitled to credit the number of weeks that Eggleston received benefits under her August 25, 1994 award against the 500 week maximum term limits relating to the carpal tunnel syndrome award and the right shoulder injury award.

Eggleston sustained three separate accidents for which she received three separate awards.  She is entitled to receive up to 500 weeks of benefits for each award.  The August 25, 1994 award was based on her gamekeeper's thumb.  Accordingly, the commission properly concluded that a credit against the terms of her other two awards was not due.

### III.  CHANGE IN CONDITION/GAMEKEEPER'S THUMB AWARD

"General principles of workman's compensation law provide that '[i]n an application for review of any award on the ground of change in condition, the burden is on the party alleging such change to prove his allegations by a preponderance of the evidence.'"  Great Atl. & Pac. Tea Co. v. Bateman, 4 Va. App. 459, 464, 359 S.E.2d 98, 101 (1987) (quoting Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 438-39, 339 S.E.2d 570, 572 (1986)).  Factual findings made by the commission will be upheld on appeal if supported by credible evidence.  See James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515, 382 S.E.2d 487, 488 (1989).

In holding that DuPont proved that Eggleston's gamekeeper's thumb had resolved by October 22, 1997, the commission found as follows:

> [Eggleston's] treating doctor, Dr. Enrique Silberblatt reported [her] thumb condition had "resolved" by the October 22, 1997, examination.  Dr. Murray Joiner, Jr., who examined [Eggleston] one and one half months later, also did not find the condition

disabling. [Eggleston] did not receive treatment for her thumb condition for almost two years. When Dr. Silberblatt examined her one month before the hearing, his report from that examination did not state [she] was disabled.

The [d]eputy [c]ommissioner properly did not give decisional weight to Dr. Silberblatt's October 14, 1998, report in which he said [Eggleston] was disabled because Dr. Silberblatt had not recently examined [her] before he wrote that report. His last examination was the October 22, 1997, examination during which he opined the condition had resolved.

As fact finder, the commission was entitled to weigh the medical evidence and to accept the reports and opinion of Dr. Silberblatt, Eggleston's treating physician. These support the commission's finding that Eggleston's gamekeeper's thumb had resolved. Accordingly, that finding is conclusive and binding upon us on appeal. See id.

We affirm the commission's decision.

Affirmed.