COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, Chafin and Decker
Argued at Richmond, Virginia

UNPUBLISHED

7-ELEVEN, INC. AND INDEMNITY INSURANCE
  COMPANY OF NORTH AMERICA

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1383-13-2                        JUDGE TERESA M. CHAFIN
                                                        FEBRUARY 11, 2014
ADAM C. WILLIAMS


              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Joseph F. Giordano (Kathryn Lea Harman; Semmes, Bowen &
              Semmes, on briefs), for appellants.

              Bradford E. Goodwin (Brody H. Reid; Reid Goodwin, on brief),
              for appellee.


        7-Eleven, Inc., and Indemnity Insurance Company of North America (referred to

collectively as "the employer") appeal a decision of the Virginia Workers' Compensation

Commission ("the commission") awarding Adam C. Williams ("Williams") benefits for an

injury he suffered at work.  On appeal, the employer contends that the record did not contain

sufficient evidence to support the commission's factual findings and that the commission

incorrectly held that Williams sustained an injury arising out of his employment.[1]  We disagree,

and affirm the commission's decision.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The employer's second assignment of error also asserts that Williams's injury did not
arise during the course of his employment.  Although the employer's brief addressed how the
commission allegedly erred by holding that Williams was injured by an accident "arising out of"
his employment, the employer never argued that the injury did not occur "during the course of"
that employment.  To the extent that the employer intended to raise a claim that Williams's
injury did not occur during the course of his employment (as can be read in the second
assignment of error), that issue was never developed on brief and therefore is defaulted pursuant
to Rule 5A:20(e).

I.  BACKGROUND

On November 16, 2011, Williams worked for the employer as a senior sales associate. Among other things, his job responsibilities included stocking shelves with merchandise. Periodically, Williams had to stock high shelves inside the cooler of his store.  Williams used a plastic step-stool provided by the employer to properly stock the high shelves in the cooler.  The step-stool was necessary to stock the shelves due to their angle.  Unless the stocking employee elevated his or her height by using the step-stool, merchandise placed onto the shelves would spill from them if they were stocked when less than three-quarters full of inventory.

The step-stool was square in shape and consisted of two levels.  The top level of the step-stool sat directly above the lower level.  A gap between the two levels theoretically allowed the lower level to act as an intermediate step to the top level of the stool.  Williams testified that the top level of the stool was approximately eighteen inches from the floor.  A co-worker testified that the top level of the stool was between eighteen and twenty-four inches from the floor.  Margaret Weakley ("Weakley"), the store's manager, testified that the top level of the stool was approximately twelve to fourteen inches from the floor.  Photographs of the stool were properly admitted into the record in the hearings before the commission.  The employer provided the same model of step-stool from the same supplier to each of its stores nationwide.

Williams testified that he could not use the lower level of the stool as an intermediate step.  He stated that the gap between the two levels of the stool was not large enough to allow him to place his foot between the levels.[2]  He also stated that the lower level of the stool only protruded one or two inches from the top level and that the ledge created by this protrusion was not large enough to support his foot.  As he could not use the lower level of the stool as an

---

[2] Williams testified that he wore a "size thirteen or fourteen" shoe.

intermediate step, Williams stepped directly from the top level of the stool to the floor when descending from the stool.

Williams used the stool to stock the higher shelves in the store's cooler on November 16, 2011. When he finished stocking the shelves, he stepped directly from the top level of the stool to the floor with his left foot. When he did so, he heard a cracking sound and instantly felt pain in that foot.[3] Immediately after the accident, Williams notified his first assistant manager by phone and Weakley by a note he left at the store. Williams finished his shift at the store and then went to Culpeper Regional Hospital for medical treatment. He was diagnosed with a "Jones fracture" in his left foot, and eventually required surgery to help the fracture heal.

Williams filed a claim for benefits on November 30, 2011, alleging an injury by accident on November 16, 2011, to his left foot. A hearing was held before a deputy commissioner on May 1, 2012. The deputy commissioner denied Williams's claim for benefits, finding that the injury did not arise from the conditions of his employment. Specifically, the deputy commissioner found that Williams "stepped down from the stool with his left foot, but did not feel anything or hear anything crack in that foot until he placed his right foot on the floor." Accordingly, the deputy commissioner held that Williams's injury occurred "as he merely stepped from a stool and that he [had] not identified any work-related factor that contributed to his injury." Williams requested a review of this decision.

On July 9, 2013, the commission reversed the decision of the deputy commissioner. The commission held that the "unusual stool [did] not present a uniform degree of safety when used

---

[3] At the hearing before the deputy commissioner, Williams testified that he was carrying two or three twenty-ounce bottles at the time of the accident. The deputy commissioner did not find that testimony credible. The deputy commissioner noted, however, that even if Williams was carrying the bottles, he did not assert that he was affected by them or that they played a part in his injury. Therefore, the fact that Williams may or may not have been carrying bottles as he descended the stool is irrelevant to this analysis.

by all employees," and concluded that Williams could not use the lower level of the stool as an intermediate step due to the size of his feet and the stool's configuration. The commission found that the photographs of the stool established that it was at least eighteen inches tall and that Williams had to step down an unusual distance from the top of the stool due to its height and the unavailability of the intermediate step. Thus, the commission held that the unusual step-stool created a unique risk of Williams's employment.

Although the commission noted that the distinction was "not of critical importance," it stated that the deputy commissioner's findings concerning the sequence of Williams's steps down from the stool and his injury were not necessarily accurate. Unlike the deputy commissioner, the commission found that Williams was in the process of bringing his right foot down from the stool when he heard his left foot crack and felt pain. The commission held that "the injury occurred and [Williams's] left foot fractured with an audible crack as all of his weight came down onto it from a height of eighteen inches to two feet." Accordingly, the commission held that Williams's injury arose from the risk posed by the stool, and therefore, arose from his employment.

One commissioner dissented from the majority's opinion on the grounds that Williams's injury did not arise from his employment. The dissenting commissioner found that "the action causing [Williams's] injury was one to which [he] would have been equally exposed apart from his employment," and noted that having all of one's weight on one foot after stepping down from a height of eighteen inches "is frequently encountered in daily life, such as in walking up stairs, stepping onto a sidewalk, etc." The employer appealed the commission's decision to this Court.

## II. ANALYSIS

On appeal, the employer argues that the evidence in the record did not support the commission's factual determinations concerning the cause of the injury. The employer further

argues that Williams's injury did not arise out of his employment.[4]  Whether an injury arises out of employment is a mixed question of law and fact.  Southside Va. Training Ctr. v. Ellis, 33 Va. App. 824, 828, 537 S.E.2d 35, 37 (2000).  Although we review the ultimate legal issue *de novo*, "[i]t is fundamental that a finding of fact made by the commission is conclusive and binding upon this [C]ourt on review.  That contrary evidence may be in the record is of no consequence if there is credible evidence to support the commission's findings."  Id. at 828, 537 S.E.2d at 36 (citations omitted).[5]  Further, on appeal we "'view the evidence in the light most favorable to the party who prevailed before the commission.'"  Nurses 4 You, Inc. v. Ferris, 49 Va. App. 332, 339, 641 S.E.2d 129, 132 (2007) (quoting K & K Repairs & Constr. v. Endicott, 47 Va. App. 1, 6, 622 S.E.2d 227, 229 (2005)).

## A.  THE COMMISSION'S FACTUAL DETERMINATIONS ARE SUPPORTED BY CREDIBLE EVIDENCE

Initially, we hold that the factual determinations of the commission are supported by credible evidence in the record.  In the present case, the commission reached a different conclusion than the deputy commissioner and made additional factual findings that supported its decision regarding the physical characteristics of the step-stool and the sequence of Williams's injury.  As these additional factual findings were supported by credible evidence in the record, the commission did not err in making them.  See Bullion Hollow Enterprises, Inc. v. Lane, 14 Va. App. 725, 729, 418 S.E.2d 904, 907 (1992); Goodyear Tire & Rubber Co. v. Pierce, 5 Va. App. 374, 380, 363 S.E.2d 433, 436 (1987).

---

[4] At the hearings before the commission, the employer also argued that Williams's injury resulted from an idiopathic condition (specifically diabetes) rather than the November 16, 2011 accident.  The employer, however, does not make this argument on appeal, and therefore this issue is not before this Court.

[5] See also Code § 65.2-706(A) ("an award of the commission . . . shall be conclusive and binding as to all questions of fact").

- 5 -

> "Findings of basic fact must reveal the [commission's] analysis of the evidence and its determination therefrom regarding the various issues of fact which bear on the particular claim. . . . [T]he specific findings of basic fact must reveal the [commission's] determination of various relevant sub-issues and factual disputes which, in their sum, are dispositive of the particular claim or ultimate factual question before [it]."

Id. at 384, 363 S.E.2d at 438-39 (quoting Perez v. United States Steel Corp., 426 N.E.2d 29, 33 (Ind. 1981)).  In this case, the commission based its conclusion that Williams's injury arose from his employment primarily on the physical characteristics of the step-stool.  The commission examined the record and concluded that the stool was "unusual" due to its construction and height.  The commission based its findings on the testimony of Williams and his co-workers and the photographs of the stool contained in the record.  Thus, these decisions were supported by the evidence in the record.

The commission also questioned the sequence of the accident relied on by the deputy commissioner.  Although the deputy commissioner found that Williams heard a crack and felt pain in his left foot after his right foot was already on the ground, the commission noted that this description of the accident "may not be accurate."  Based on Williams's testimony describing the accident, the commission concluded that Williams was still in the process of stepping down from the stool with his right foot when he initially felt pain in his left foot.  As the commission's conclusion regarding the sequence of the accident was based on Williams's testimony, it is also supported by evidence in the record.[6]

On appeal, the employer argues that the commission improperly disregarded the deputy commissioner's credibility determination concerning Williams's testimony when making its

---

[6] Although this conclusion is supported by the record, the commission put little emphasis on this additional factual finding, specifically noting that the distinction was "not of critical importance."  The commission based its decision on the physical characteristics of the stool that required Williams to step down from an elevated height rather than the temporal sequence of the injury.

additional factual determinations.  However, the deputy commissioner did not make any credibility determinations concerning the testimony pertaining to the additional findings. Although the deputy commissioner found that Williams's testimony concerning whether or not he was carrying bottles when he was injured lacked credibility, the deputy commissioner limited this determination to that specific testimony.  The deputy commissioner did not find that Williams's entire testimony was incredible.  Thus, the commission could consider Williams's testimony concerning the step-stool and the sequence of his injury in making additional factual findings in this case without addressing the deputy commissioner's credibility determination concerning his testimony about carrying bottles.[7]

Although the commission made additional factual determinations concerning the step-stool and a conflicting factual determination concerning the sequence of Williams's injury, these additional findings were supported by credible evidence in the record.  The commission explained how the additional findings were supported by the photographs of the stool and the testimony of Williams and his co-workers regarding the stool and his injury.  Therefore, the commission did not err in making these additional findings.

### B.  WILLIAMS'S INJURY AROSE FROM HIS EMPLOYMENT

To obtain compensation for injuries, a claimant must prove by a preponderance of the evidence that he or she suffered an injury by accident "arising out of and in the course of the employment."  Code § 65.2-101.  In determining whether an injury arises out of employment,

> "Virginia employs the actual risk test.  A claimant's injury arises out of the employment if the manner in which the employer requires the work to be performed is causally related to the

---

[7] We also note that the deputy commissioner did not base this credibility determination on Williams's demeanor or appearance.  "Absent a specific, recorded observation regarding the behavior, demeanor or appearance of [a witness], the commission [has] no duty to explain its reasons for finding [that witness] more credible than [another]."  Bullion Hollow, 14 Va. App. at 729, 418 S.E.2d at 907.

resulting injury." . . . "An injury does not arise out of the employment when it 'cannot be fairly traced to the employment as a contributing proximate cause and . . . comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood.'"

Ellis, 33 Va. App. at 828-29, 537 S.E.2d at 37 (quoting Vint v. Alleghany Regional Hosp., 32 Va. App. 60, 63-64, 526 S.E.2d 295, 297 (2000)). Thus, "[s]imple acts of walking, bending, or turning, without any other contributing environmental factors, are not risks of employment." Id. at 829, 537 S.E.2d at 37. "The mere happening of an accident at the workplace, not caused by any work related risk or significant work related exertion, is not compensable." Plumb Rite Plumbing Serv. v. Barbour, 8 Va. App. 482, 484, 382 S.E.2d 305, 306 (1989).

> Perhaps the most common examples of the arising-out-of principle are the cases involving tripping on steps. An employee who trips while walking up a staircase at work cannot recover compensation unless something about the steps (or some other condition of the workplace) presented a hazard or danger peculiar to the worksite. . . . [I]f there is "nothing unusual or wrong with the steps," an employee who trips over them cannot show the accident "arose out of" the employment. [County of Chesterfield v.] Johnson, 237 Va. [180,] 185-86, 376 S.E.2d [73,] 76 [(1989)]. On the other hand, if the steps are "unusual" because they are "slightly higher than normal" or otherwise peculiar, then tripping over them would involve an accident arising out of the employment. Id. In such cases, the steps present an *enhanced* risk, qualitatively different from the steps most people walk up and down on and off the job.

Bernard v. Carlson Companies-TGIF, 60 Va. App. 400, 407, 728 S.E.2d 508, 511-12 (2012). See also Reserve Life Insurance Co. v. Hosey, 208 Va. 568, 572, 159 S.E.2d 633, 636 (1968) (affirming commission's award of benefits to claimant who injured her knee when walking up stone steps that were "just a little bit higher than usual for a step").

In the present case, the commission held that the step-stool Williams used to stock the higher shelves in his store's cooler was "unusual." Based on a review of the photographs in the

record and testimony from Williams and his co-workers, the commission concluded that the stool was at least eighteen inches high. Further, the commission concluded that the design of the stool prevented Williams from using its lower level as an intermediate step. Williams's feet were too large to fit in the gap between the two levels of the stool, and the ledge created by the lower level of the stool was too small to support Williams's feet. For these reasons, the commission found that Williams could not use the lower level as an intermediate step, and therefore, that he had to step directly from the top level of the stool to the floor when descending the stool. As previously stated, these factual findings are supported by credible evidence in the record.

Applying these facts, the commission held that the step-stool presented a "risk purely and uniquely . . . related to [Williams's] employment." The commission noted that Williams would not have been exposed to the risk of injury from descending such an unusual step-stool outside of his employment. As the step-stool presented a unique risk of employment and that risk caused Williams's injury, the commission held that the injury arose from Williams's employment. Based on the facts of this case, the commission did not err in reaching this conclusion.

Like a step that is higher than usual, the step-stool in the present case presented an enhanced risk uniquely related to Williams's employment. Although the employer argues that Williams would have been exposed to this risk completely apart from his employment, the facts of this case foreclose this argument. The configuration of the stool forced Williams to step directly from the top of the stool to the floor, a distance of at least eighteen inches. Although the mundane act of simply stepping down from an object is common in the activities of everyday life, the act of stepping down from a height of at least eighteen inches is not. As stated by the dissenting commissioner, a step of eighteen inches is "certainly greater than the distance of a normal step." Williams would not typically take steps of this distance when descending stools, step ladders, or steps outside of work. Although the dissenting commissioner concluded that

- 9 -

Williams would encounter the same risks walking up stairs or stepping onto sidewalks, this inference is contrary to his conclusion concerning the height of a normal step.[8] Williams generally would not be required to step down from an object at least eighteen inches high outside of his need to use the step-stool at work.

Williams's employment duties included stocking the shelves at his store with inventory, and Williams had to use the step-stool to stock the higher shelves in his store's cooler. Thus, his employment exposed him to the risk created by the step-stool. By using the stool, he had to step a greater distance than he would normally step from the top of the stool down to the floor, and this very act caused his injury. Therefore, the injury that Williams sustained on November 16, 2011 when he stepped from the stool to the floor arose from his employment and the commission did not err in reaching this conclusion.

For these reasons, we affirm the commission's decision awarding benefits to Williams.

Affirmed.

---

[8] Both the deputy commissioner and the dissenting commissioner based their conclusions that Williams's injury did not arise out of his employment on the commission's decision in Johnson v. K-Mart Corp., No. VA00000019596 (Va. Workers' Comp. Comm'n Oct. 20, 2011). Johnson differs from the present case in two important ways. In Johnson, an employee suffered similar injuries when she stepped down from a two-step step ladder. Unlike the step-stool in the present case, however, the step ladder in Johnson was "an object fashioned like a miniature flight of stairs." Johnson at *3. The step-stool from which Williams stepped was structurally different. More importantly, the employee in Johnson was able to step down onto the intermediate step of the step ladder before stepping down to the floor. Id. at *2. She did not have to step to the floor directly from the top step of the step ladder. Based on these distinguishing facts, the majority of the commission correctly held that Johnson was inapposite to this case.