### Richmond

## OAK HILL NURSING HOME, INC. AND
## ST. PAUL FIRE & MARINE INSURANCE COMPANY

### V.

## RUBY BACK

October 10, 1980.

Record No. 791734.

Present: All the Justices.

412

*Colin J. S. Thomas, Jr.* (*Timberlake, Smith, Thomas & Moses,* on brief), for appellants.

No brief or argument for Ruby Back, appellee.

PER CURIAM.

An employer, Oak Hill Nursing Home, Inc., and its carrier, St. Paul Fire and Marine Insurance Company, claim that the Industrial Commission of Virginia determined their liability for the payment of a compensation claim without according them proper notice or a reasonable opportunity to defend.

On January 29, 1978, Mrs. Ruby Back, a laundry worker employed by Oak Hill in Staunton, suffered an injury to her right wrist while at work. Dr. John Todd diagnosed her condition as "Tenosynovitis right wrist." Oak Hill reported the accident to the Industrial Commission, and the claim was assigned file number 573-110. The parties executed a memorandum of agreement as to compensation on March 22, 1978. The employee was paid total compensation of $586.64 and returned to work on April 10, 1978. At the time the award was terminated the employee was advised that she could reopen the claim if further disability resulted. Dr. Todd saw Back on May 15, 1978, and reported to St. Paul that an examination of her wrist proved negative and that she had no complaints with regard to it.

An out-patient form executed by Dr. Eugene Nolley discloses that on September 6, 1978, Mrs. Back was seen in the emergency room of King's Daughters' Hospital, Staunton, and was examined for "a painful wrist allegedly since Jan. Tender over dorsal wrist area. Probably tendonitis. X-ray shows no acute change." The patient was instructed to see her private physician, Dr. Todd. On September 14, 1978, Dr. Todd advised St. Paul and the Industrial Commission that he had examined Mrs. Back on September 8, 1978, at which time she represented to him that she had been "doing well until [September 6, 1978] when she reinjured her right hand and wrist at work while

pushing the handle on a mop bucket." The physician further reported that his examination revealed tenderness, dorsally and laterally at the right wrist, hand, and forearm, which he attributed to a strain. He reported that Mrs. Back "might well have a recurrence of her tenosynovitis." Dr. Todd added: "I do not feel that I can evaluate this patient with regard to her January 29, 1978, injury at the present because of this most recent injury."

The next development was the filing by Oak Hill on September 28, 1978, of an employer's first report of accident, setting forth that Mrs. Back had allegedly suffered an injury on September 6, 1978; that her report to Oak Hill was "that she was cleaning bed [sic] and twisted her arm between bed rail and bed springs"; and that her report to a physician was that "she injured her wrist pushing a mop bucket." This employer's report showed "no lost time" from work by Mrs. Back.

On November 21, 1978, the Industrial Commission received a letter from Mrs. Back which in substance said that Dr. Todd had recommended that she not work because of her injured wrist and that she was therefore notifying the Commission. Her letter reads:

Dr. Todd pull me from work for awhile you said i was to let you no if i am un able to earn My wage. due to the injury wrist let you no. i am sorry. for not let you no sooner. i hope he let me go Back to work. He order me a support i work in it to weak it swollen up so Bad

Mrs. Back.

The Commission acknowledged receipt of this letter on December 8, 1978, advising Mrs. Back, with a copy to St. Paul, that it was considering the letter as the "making of a claim." The Commission assigned the claim file number 597-978. St. Paul subsequently denied worker's compensation benefits to Back because it was unable to determine if her current problem was the result of an injury arising out of and in the course of her employment by Oak Hill.

On January 2, 1979, Dr. Todd reported to St. Paul that Mrs. Back had reinjured her right wrist on September 6, 1978, that the injury consisted of a strained right forearm, wrist, and hand, and that she had "probably developed a reoccurrence of her tenosynovitis." He doubted that Mrs. Back would be able to return to a job that required heavy work with the right wrist, and he suggested that she be retrained for a different type of work. In March, 1979, Dr. Todd referred Mrs. Back to Dr. Frank McCue of the University of Virginia Hospital. Dr. McCue confirmed Dr. Todd's diagnosis, finding, among other things,

"deQuervain's and stenosing tenosynovitis of the wrist." Her condition required an operation in June, 1979, in the Waynesboro Community Hospital by Dr. McCue.

At an abbreviated hearing before Deputy Commissioner Yates, held in Staunton on June 1, 1979, Mrs. Back appeared without counsel. She was advised that her application represented that she was hurt on September 6, 1978, and that the Commission had a prior file on her for an accident that occurred in early February, 1978, involving the same employer and the same carrier. When asked what, if anything, happened on the job to require that she go to see the doctor, Mrs. Back replied:

A.    And then they transferred me into—to mopping the bedrooms and then, I don't know, I felt like I twisted my hand or you know what but I went to and it kept on—on me, so I went over to the hospital and I had it X-rayed and Dr. Eugene Nolley, he X-rayed it and he sent me back to Dr. Todd.

Q.    What is it you say happened on the job to cause you to have to go see the doctor to start with, what if anything?

A.    Well, I don't [know] why I could have pulled it or what, my—and it just swoll continuously, you know, bad, so I went to see Dr. Todd and he said I had twisted my wrist, pulled my leters or something.

Q.    Did this come on you gradually or was it a certain event on a given day that it happened or what?

A.    No sir.

Q.    Was it any of that? Did it come on gradually?

A.    Yes sir.

Q.    It developed then, over a period of days or weeks, is that what you're saying?

A.    Yes sir.

Q.    What happened, it finally got so bad that you went to see the doctor?

A.    Yes sir.

Mrs. Back testified that she had not worked since October 31, 1978, when she "walked out" of the Oak Hill Nursing Home. She said she quit work because Dr. Todd told her the work was entirely too hard on her wrist.

On June 27, 1979, the Commission, in two opinions by Deputy Commissioner Yates, found that there was "no specific occurrence

but rather a gradual onset of the problem that appears from the medical reports to be tenosynovitis which is an occupational disease"; that a condition of tenosynovitis had existed from the January 29, 1978 accident and had "reasserted" itself, although that claim was handled as a traumatic injury; and that the September 6, 1978 difficulty was a "continuation of the earlier compensable injury."

The Commission ordered that its file 597-978 be closed and consolidated into file 573-110. It treated the November 21, 1978 letter from Mrs. Back as a change in condition application, under the appropriate statutes and the Commission's Rules, for further award of compensation and medical payments.

In a review by the full Commission of its June 27, 1979 decision and award consolidating the two files and holding that the continuing related incapacity and medical attention were compensable from the January 29, 1978 right wrist injury (File 573-110), the deputy commissioner's determination was affirmed, with one dissent.

The Commission pointed out that had it not consolidated the two files and proceeded in the manner that it did, there would have been "considerable delay and attendant hardship to the unrepresented laundry worker claimant [Mrs. Back] of limited education." It further said that it was acting pursuant to longstanding approved workmen's compensation practice that all possible relevant aspects of a matter be considered and determined in one hearing proceeding.

Although Oak Hill refers to the discrepancy in Mrs. Back's statements of the cause of the alleged injury she received on September 6, 1978, its primary complaint is of the manner in which the Commission treated the two cases. It alleges that the January 29, 1978 accident had been duly reported, the employer's liability determined, compensation paid, and the case concluded. Oak Hill says that the only notice it received was that the claim arising out of the September 6, 1978 injury would be the subject of the June 1, 1979 hearing before Deputy Commissioner Yates. It argues that it attended that hearing prepared only to defend Mrs. Back's claim for a traumatic injury which she allegedly sustained on September 6, 1978, and that the failure of the Commission to alert the employer and its carrier that the hearing might focus upon the January 29, 1978 injury and claim was prejudicial. It says that notice to the employer and carrier of a hearing on file number 597-978, which involved an alleged traumatic injury, was not sufficient notice of a hearing of a claim made under file number 573-110 to determine if there had been a change in condition. It points to our opinion in *Leonard* v. *Arnold,* 218 Va. 210,

215, 237 S.E.2d 97, 100 (1977), where we said: "An application for compensation based on a 'change in condition' cannot be used as a substitute for an original hearing on a new and separate accident." Appellants argue that the reverse of this is equally true.

The opinion of the Industrial Commission notes that only one employer and one carrier had been involved, and it stated that the two files had "been jointly processed by the carrier and Commission all along." It further found as a fact that "[m]edical reports [had] gone to the carrier covering the matters" and that the carrier "was manifestly aware of the overlaping [sic] aspect inherent in the particular medical condition involved." The Commission did not regard as fatal the fact that its docketing clerk, in sending out notices of the June 1, 1979 hearing, referred only to the September 6, 1978 accident, because "[p]lainly the defendants . . . were aware of the entire nature of the matter and claim," and further because the Deputy Commissioner had made reference to file number 573-110 at the outset of the hearing.

In reviewing the exhibits, we note and attach significance to the statement appended to the Commission's award in file number 573-110 that "in view of the nature of the injury sustained by this claimant, before closing the file, we will require a final medical report covering the question of permanent disability." Dr. Todd's attending physician's report, dated March 2, 1978, said that it was then "too early to state" if Mrs. Back had sustained a permanent injury. In Todd's May 16, 1978 letter to the carrier, he stated that Mrs. Back "is to return to see me only if she has further difficulty." In Todd's September 14, 1978 letter to the carrier and the Commission, he specifically stated that Mrs. Back might well have had a reoccurrence of her tenosynovitis and that he could not evaluate Mrs. Back with regard to her January 29, 1978 injury because of her September 6, 1978 injury. The summary made by Dr. Nolley of Mrs. Back's treatment in the emergency room of King's Daughters' on September 6, 1978, also referred to the January 1978 injury.

The dispositive issue in this case is whether appellants were prejudiced by the failure of the Commission to have advised Oak Hill and St. Paul, prior to the June 1, 1979 hearing, that the Commission would consolidate the two files and would consider whether or not Mrs. Back had sustained a traumatic injury on September 6, 1978, or whether there had been a change in her condition by reason of the earlier injury.

In *Mullane* v. *Central Hanover Tr. Co.,* 339 U.S. 306, 314-15 (1950), the Court held:

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citations omitted.] The notice must be of such nature as reasonably to convey the required information, . . . and it must afford a reasonable time for those interested to make their appearance, . . . But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied. "The criterion is not the possibility of conceivable injury but the just and reasonable character of the requirements, having reference to the subject with which the statute deals." [Citations omitted.]

We agree with Commissioner Evans' dissent that the evidence adduced at the hearing did not clearly establish the reoccurrence of an injury by accident to Mrs. Back's wrist on September 6, 1978. However, there is no question but that Mrs. Back did sustain a traumatic injury to her wrist on January 29, 1978, which required medical attention and for which she was awarded compensation. Further, there is no question but that on September 6, 1978, and thereafter, Mrs. Back sought and received medical treatment for a condition described as tenosynovitis, a condition which followed her first injury. In view of the medical reports, which were in the possession of both the employer and the carrier, it must have been obvious to them that they were dealing with a claimant who was suffering from a condition that had existed since January 29, 1978, and which during the interim had progressed, deteriorated, become more aggravated, or otherwise changed.

All parties knew that Mrs. Back's original claim could be reopened within twenty-four months from the last date for which compensation was paid to her, in event of further disability. Virginia Code § 65.1-99. Although Mrs. Back is not an educated woman, it is clear from the letter that she wrote the Commission in November 1978, that she knew of her right under the statute to reopen her claim. She specifically advised the Commission that the doctor had stopped her from working, and that she was writing because the Commission had said that she was to let it know if she was unable to earn her wages due to the wrist injury. This letter was followed by two other letters from the claimant to the Commission regarding the condition of her wrist and her inability to work.

The consolidation of the two claims by the Industrial Commission was a matter within its discretion. We are of opinion that the employer and the carrier had notice which was reasonably calculated, under all the circumstances, to apprise them that Mrs. Back had suffered a change of condition subsequent to the last payment of compensation to her growing out of the January 29, 1978 accident, and was making a further claim. They could have offered evidence at the hearing that Mrs. Back's condition was neither due to a traumatic injury on September 6, 1978, nor an aggravation of her condition growing out of the first accident. They elected to offer no evidence.

The award of the Commission is

*Affirmed.*