UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Beales and McCullough
Argued at Alexandria, Virginia


SOUDABEH WHITE

MEMORANDUM OPINION[*] BY
v.       Record No. 0903-14-4          JUDGE RANDOLPH A. BEALES
FEBRUARY 24, 2015

MALCOLM WHITE


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
John M. Tran, Judge

Michael A.F. Johnson (Arnold & Porter LLP, on briefs), for
appellant.

Sonya L. Powell (Powell Piper Radomsky PLLC, on brief), for
appellee.


Soudabeh White (mother) appeals the circuit court's decision to register a foreign child

custody order under Code § 20-146.26 of Virginia's Uniform Child Custody Jurisdiction and

Enforcement Act (UCCJEA).  Mother also challenges the circuit court's decision under Code

§ 20-146.33 to award Malcolm White (father) his attorneys' fees and costs related to the registration

of the foreign child custody order.  For the reasons that follow, we affirm the circuit court's

judgment in this case.

I. BACKGROUND

Under settled principles of appellate review, we view the evidence in the light most

favorable to father, as the party prevailing below, Chretien v. Chretien, 53 Va. App. 200, 202, 670

S.E.2d 45, 46 (2008), and we grant to father "all reasonable inferences fairly deducible therefrom,"

Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999).  Mother and father were

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

married in Switzerland in 2009 and had one child ("the child") during the marriage. They separated in 2010. Pursuant to a consent order, on October 4, 2010, a Swiss court preliminarily granted mother physical custody of the child. Father was granted visitation rights.

On April 24, 2011, mother left Switzerland with the child and went to the United States – apparently to pursue a different medical diagnosis and course of treatment for the child's various health issues. Litigation related to custody remained pending in Switzerland at that time. On March 15, 2013, Judge Catherine Hekimi, of the Court of First Instance of the Republic and Canton of Geneva, issued a twenty-two-page opinion and order granting father "the custody of and parental authority over the child" while granting mother limited visitation rights.[1] Judge Hekimi's custody order is central to the present appeal because father then sought to register it in Virginia under the provisions of the UCCJEA.

On April 12, 2013, father filed in the Fairfax County Juvenile and Domestic Relations District Court (JDR court) a petition to register Judge Hekimi's March 15, 2013 foreign custody order in Virginia. The JDR court granted this relief on October 25, 2013, when it also denied mother's request to stay enforcement of that foreign custody order. The JDR court ordered that physical custody of the child be transferred to father on October 29, 2013. After father assumed physical custody of the child, they returned to Switzerland. Mother thereafter also returned to Switzerland. According to the record, there were pending charges filed against mother in Switzerland upon her return. Those charges were apparently related to mother's decision to take the child to the United States, and prompted the Swiss authorities to place travel restrictions upon her.

Mother, through her counsel in Virginia, appealed the JDR court's decision to the circuit court for a trial *de novo*. The circuit court convened a hearing related to the foreign custody order

---

[1] There were parallel tracks of litigation that proceeded before what the parties here have described as a Swiss "separation judge" and a Swiss "divorce judge." Judge Hekimi was the Swiss "separation judge."

registration issue on April 16, 2014 and a further hearing related to attorneys' fees and costs on May 2, 2014. In its final order dated May 30, 2014, the circuit court granted father's motion to register the foreign custody order under Code § 20-146.26 and also awarded father $55,772 of his attorneys' fees and costs related to the registration litigation under Code § 20-146.33. Mother now appeals both of these rulings.

## II. ANALYSIS

### A. REGISTRATION OF FOREIGN CUSTODY ORDER

Mother challenges the Fairfax Circuit Court's decision to register the foreign custody order entered by Judge Catherine Hekimi of Switzerland on March 15, 2013. It is important to note that mother does not argue that the Swiss judicial system lacks a legitimate interest or proper jurisdiction under Virginia's UCCJEA to decide issues related to the custody of this child. She also does not contend that the Virginia judicial system actually has such jurisdiction under the terms of Article II of Virginia's UCCJEA.

Instead, mother argues that Judge Hekimi lacked subject matter jurisdiction to decide the custody of the child on March 15, 2013 and that Judge Hekimi's order entered on that date should not be recognized under Virginia law. Mother acknowledges that Judge Hekimi's order has been affirmed on appeal in Switzerland. Father's counsel has represented on brief and in oral argument before this Court that Switzerland's highest appellate court upheld Judge Hekimi's order in July 2014, and mother has not disputed that assertion. However, mother contends that the November 8, 2013 opinion of the Court of Justice, Civil Chamber, of the Republic and Canton of Geneva (i.e., a Swiss intermediate appellate court), establishes that Judge Hekimi's jurisdiction had lapsed and that she reacquired jurisdiction retroactively as of March 15, 2013, based on events that occurred in May

- 3 -

2013.[2]  Mother argues that Judge Hekimi's March 15, 2013 custody order cannot be registered in Virginia on the ground that the retroactive acquisition of subject matter jurisdiction is incompatible with principles of law in the United States and in Virginia.  Mother argues that courts in the United States and in Virginia cannot acquire jurisdiction retroactively, and she urges this Court to apply that rule to the circumstances in this case – which involves an order entered by a Swiss judge that has been presented for registration in Virginia.  To the extent that mother raises issues of law, we consider those issues *de novo*.  See Tharpe v. Saunders, 285 Va. 476, 482, 737 S.E.2d 890, 893 (2013).

Code § 20-146.4 expressly addresses how child custody determinations from foreign countries are to be treated under Virginia's UCCJEA.  It states:

> A. A court of this Commonwealth shall treat a foreign country as if it were a state of the United States for purposes of applying this article and Article 2 (§ 20-146.12 et seq.) of this chapter.
>
> B. Except as otherwise provided in subsection C, a child custody determination made in a foreign country under factual circumstances in substantial conformity with the jurisdictional standards of this act must be recognized and enforced under Article 3 (§ 20-146.22 et seq.) of this chapter.
>
> C. A court of this Commonwealth need not apply this act if the child custody law of a foreign country violates fundamental principles of human rights.

---

[2] The joint appendix includes a certified English translation of the Swiss intermediate appellate court's opinion.  It states, in pertinent part:

> The original trial judge [i.e., Judge Hekimi] therefore had jurisdiction to decide on the rule as soon as seated, until the pronouncement of the provisional measures [before the divorce judge] on February 1, 2013.
>
> However, the appellant withdrew his petition for provisional measures on May 27, 2013.  In doing so, the order of February 1, 2013 lapsed.  As a consequence the Court of First Instance [i.e., Judge Hekimi] had jurisdiction, under the present case, to order new measures after February 1, 2013.  The respondent, therefore, is rejected in its pleas on that point.

Code § 20-146.4; see also Code § 20-146.24(A) ( "A court of this Commonwealth shall recognize and enforce a child custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with this act or the determination was made under factual circumstances meeting the jurisdictional standards of this act and the determination has not been modified in accordance with this act.").

This Court has explained that Code §§ 20-146.4 and 20-146.24,

> when read together, would require a Virginia court to recognize and enforce a foreign court's child custody determination if the foreign court would have had jurisdiction under the standards of the UCCJEA or under a jurisdictional standard "in substantial conformity" therewith. This test is essentially what Code § 20-146.4(B) explicitly prescribes.

Prizzia v. Prizzia, 58 Va. App. 137, 150 n.5, 707 S.E.2d 461, 467 n.5 (2011). As explained *supra*, mother does not allege that the Swiss courts in general lack authority or are not otherwise competent to decide issues concerning the custody of this young child, who was born in Switzerland to parents who were married in Switzerland. Mother also does not contend that any of the express requirements for registration of an out-of-state custody order under Code § 20-146.26 are missing here.[3] See Prashad v. Copeland, 55 Va. App. 247, 261, 685 S.E.2d 199, 206 (2009) ("Upon receipt

_____

[3] Code § 20-146.26 states:

> A. A child custody determination issued by a court of another state may be registered in this Commonwealth, with or without a simultaneous request for enforcement, by sending to the appropriate juvenile and domestic relations district court in this Commonwealth:

> 1. A letter or other document requesting registration;

> 2. Two copies, including one certified copy, of the determination sought to be registered, and a statement under penalty of perjury that to the best of the knowledge and belief of the person seeking registration the order has not been modified; and

of the required documents, Code § 20-146.26 clearly states that 'the registering court *shall* [c]ause the determination to be filed as a foreign judgment.'" (quoting Code § 20-146.26(B)(1) (emphasis supplied in <u>Prashad</u>)). The record does not indicate that Judge Hekimi's March 15, 2013 foreign custody order has been modified (which would be a basis for challenging registration) – but instead it has been *upheld* on appeal in Switzerland. Judge Hekimi's March 15, 2013 foreign custody order, on its face, is fit to be registered in Virginia under Code § 20-146.26.

Mother's claim that Judge Hekimi retroactively acquired jurisdiction as of March 15, 2013 is not a basis to challenge registration of the foreign custody order under Virginia's UCCJEA. To be clear, this case does not present the issue of *a Virginia court* allegedly acquiring subject matter jurisdiction over a case retroactively. Instead, the issue mother presents in this case is her challenge – under general principles of Virginia law – to the method by which the judicial system of a sovereign nation, Switzerland, determines how jurisdiction in the areas of separation and divorce is parceled among the various courts within Switzerland. However, Virginia's UCCJEA is designed to facilitate recognition of a foreign custody order – provided that certain conditions, which are not disputed here, have been met. <u>See</u> <u>Prizzia</u>, 58 Va. App. at 150 n.5, 707 S.E.2d at 467 n.5; <u>see also</u> Code § 20-146.26.

---

3. Except as otherwise provided in § 20-146.20, the name and address of the person seeking registration and any parent or person acting as a parent who has been awarded custody or visitation in the child custody determination sought to be registered.

B. On receipt of the documents required by subsection A, the registering court shall:

1. Cause the determination to be filed as a foreign judgment, together with one copy of any accompanying documents and information, regardless of their form; and

2. Serve notice upon the persons named pursuant to subdivision A 3 and provide them with an opportunity to contest the registration in accordance with this section.

Mother's argument on appeal overlooks the purposes of the UCCJEA, which are actually codified in the UCCJEA itself. Code § 20-146.38(A) states that the UCCJEA's general purposes include "[a]void[ing] jurisdictional competition and conflict with courts of other states in matters of child custody"; "[p]romot[ing] cooperation with the courts of other states"; "[a]void[ing] relitigation of custody decisions of other states in this Commonwealth insofar as feasible"; and "[f]acilitat[ing] the enforcement of custody decrees of other states . . . ." See also Middleton v. Middleton, 227 Va. 82, 92, 314 S.E.2d 362, 367 (1984). Code § 20-146.38(B) directs, "This act shall be construed to promote the general purposes stated in this section." Husband's petition to register Judge Hekimi's March 15, 2013 custody order satisfied the requirements of the UCCJEA generally and the registration statute, Code § 20-146.26, specifically. To hold that this foreign custody order cannot be registered in Virginia, under the circumstances presented here, would frustrate the clear purposes of Virginia's UCCJEA.

Furthermore, we disagree with mother's argument that this case presents an instance where Switzerland's child custody law "violates fundamental principles of human rights." See Code § 20-146.4(C) ("A court of this Commonwealth need not apply this act if the child custody law of a foreign country violates fundamental principles of human rights."). Code § 20-146.4(C) reflects that some foreign child custody laws may be wholly incompatible with, or highly offensive to, "fundamental principles of human rights" in the United States and in Virginia specifically. However, the circumstances of this case simply do not meet this extremely high standard. See Toland v. Futagi, 40 A.3d 1051, 1058 (Md. Ct. App. 2012) (explaining that this UCCJEA provision is drawn from a similar provision "in the Hague Convention on the Civil Aspects of Child Abduction, which permits a country to refuse to return a child if the return would violate the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms," and "has been interpreted by the United States Department of State" as

requiring circumstances that are "utterly shocking the conscience or offending all notions of due process" (internal quotation marks, alterations, and citations omitted)). To the contrary, the record here indicates that mother was actually afforded due process before Judge Hekimi,[4] and nothing in the record indicates that "the child custody law" of Switzerland would violate "fundamental principles of human rights" as they relate to the child here. See Code § 20-146.4(C).

In addition, mother's challenge to the registration of the foreign custody order on the basis that the registration was procured through extrinsic fraud on father's part is meritless. Mother asserts that father stated that he would not travel to Virginia for the circuit court trial *de novo* so long as there were travel restrictions holding mother in Switzerland – but that father nevertheless came to Virginia while the travel restrictions against mother were still in place. To the extent that the issue of extrinsic fraud is even properly before this Court on appeal,[5] the record does not establish extrinsic fraud here. The Supreme Court of Virginia has explained:

---

[4] On appeal, mother relies on language from this Court's decision in Prashad stating, "[D]uring registration, '[t]he scope of the enforcing court's inquiry is limited to the issue of whether the decree[ing] court had jurisdiction and complied with due process in rendering the original custody decree.'" 55 Va. App. at 261, 685 S.E.2d at 206 (quoting UCCJEA Prefatory Note, 9 U.L.A. 649, 653 (1997)); see also Morrison v. Morrison, 57 Va. App. 629, 643, 704 S.E.2d 617, 623 (2011) (stating that "'no further inquiry is necessary'" (quoting Prashad, 55 Va. App. at 261, 685 S.E.2d at 206)). The record plainly establishes that, during the litigation before Judge Hekimi, both parties were given reasonable notice so as to "apprise [them] of the pendency of the action and afford them an opportunity to present their objections." Oak Hill Nursing Home, Inc. v. Back, 221 Va. 411, 417, 270 S.E.2d 723, 726 (1980) (internal quotation marks and citations omitted). The record establishes that the basic principles of due process were satisfied during the custody litigation before Judge Hekimi. In fact, mother actually raised a challenge to Judge Hekimi's jurisdiction to decide the custody matter – which Judge Hekimi expressly considered and rejected, and which has now been upheld on appeal in Switzerland.

[5] Although a claim of extrinsic fraud was not expressly raised below, mother contends that the bar of Rule 5A:18 should not apply here because case law states that an order obtained through extrinsic fraud "is void and subject to attack, direct or collateral, at any time." Jones v. Willard, 224 Va. 602, 607, 299 S.E.2d 504, 508 (1987). However, it is still mother's burden on appeal to establish that the foreign custody order should not have been registered. See Lutes v. Alexander, 14 Va. App. 1075, 1077, 421 S.E.2d 857, 859 (1992). In this case, the circuit court was not actually called upon to find that father acted with fraudulent intent – and intent is a question of fact for the factfinder to determine from the evidence presented. See Jacobsen v.

> Among the instances [of extrinsic fraud] given in the books are such as these: Keeping the unsuccessful party away from the court by a false promise of a compromise, or purposely keeping him in ignorance of the suit; or where an attorney fraudulently pretends to represent a party, and connives at his defeat; or being regularly employed, corruptly sells out his client's interest. United States v. Throckmorton, 98 U.S. 61, 66 [(1878)], 25 L. Ed. 93, and authorities cited.
>
> "In all such instances the unsuccessful party is really prevented, by the fraudulent contrivance of his adversary, from having a trial; but when he has a trial, he must be prepared to meet and expose perjury then and there."

McClung v. Folks, 126 Va. 259, 270, 101 S.E. 345, 348 (1919) (quoting Throckmorton, 98 U.S. at 66); see also National Airlines v. Shea, 223 Va. 578, 583-84, 292 S.E.2d 308, 310-11 (1982); Peet v. Peet, 16 Va. App. 323, 327, 429 S.E.2d 487, 490 (1993).

In this case, father's statement that he would not travel to Virginia occurred before mother filed for summary judgment in the Fairfax Circuit Court. Regardless of whether father's presence in the circuit court was really necessary at that point, mother's filing of the motion for summary judgment potentially changed the dynamic of the registration litigation – and makes it now impossible to determine whether father's statement that he would stay in Switzerland (made before the motion for summary judgment was filed) was actually made with fraudulent intent. See McClung, 126 Va. at 270, 101 S.E. at 348 (focusing on "a false promise of a compromise"). Moreover, we observe that mother was not "really prevented" from "having a trial" in the circuit court. Id. The trial *de novo* occurred in the circuit court, where mother was ably represented by her Virginia counsel, who mainly presented testimony of mother's Swiss counsel and an expert in Swiss law who predicted (incorrectly) that the holding of the Swiss intermediate appellate court would be reversed by Switzerland's highest court and that Judge Hekimi's March 15, 2013 order would be

_____

Jacobsen, 41 Va. App. 582, 590, 586 S.E.2d 896, 899 (2003); see also Hall Bldg. Corp. v. Edwards, 142 Va. 209, 215, 128 S.E. 521, 523 (1925). Nevertheless, we will assume without deciding, for purposes of this case only, that the issue of extrinsic fraud is adequately before this Court for appellate review.

vacated as a result. The circuit court judge thoroughly considered this testimony, as well as the legal argument raised by mother's Virginia counsel, before rendering the decision to register the foreign custody order. Based on these circumstances, we cannot conclude that the circuit court trial *de novo* was marred by extrinsic fraud on father's part.

Accordingly, we affirm the Fairfax Circuit Court's decision to register Judge Hekimi's March 15, 2013 foreign custody order under Virginia's UCCJEA.

B. ATTORNEYS' FEES AND COSTS

Mother also challenges the circuit court's decision to award father $55,772 of his attorneys' fees and costs related to the registration litigation. Code § 20-146.33 states, in pertinent part:

> The [circuit] court shall award the prevailing party, including a state, necessary and reasonable expenses incurred by or on behalf of the party, including costs, communication expenses, attorney's fees, investigative fees, expenses for witnesses, travel expenses, and child care during the course of the proceedings, unless the party from whom fees or expenses are sought establishes that the award would be clearly inappropriate.

Code § 20-146.33(A). This Court has explained that Code § 20-146.33 applies a different test than Code § 20-79(b) and Code § 20-99(5), which are the attorneys' fees and costs provisions that generally apply in domestic cases. See Tyszcenko v. Donatelli, 53 Va. App. 209, 223, 670 S.E.2d 49, 56-57 (2008). Unlike with Code §§ 20-79(b) and 20-99(5), "the prevailing party has a presumptive right to fees" under Code § 20-146.33. Id. at 223, 670 S.E.2d at 56. This presumption is only rebutted upon a showing by the non-prevailing party that an award of attorneys' fees and costs "would be clearly inappropriate." Code § 20-146.33(A); see also Tyszcenko, 53 Va. App. at 223, 670 S.E.2d at 56-57 (stating that, in order to award attorneys' fees and costs to the prevailing party under Code § 20-146.33, the "trial court merely had to, and did, find that there was no showing that an award of such fees was clearly inappropriate").

Here, the circuit court carefully considered the issue of attorneys' fees and costs, and it issued a letter opinion on May 21, 2014 explaining that it found the issue to be a very close one. In this letter opinion, the circuit court thoroughly reviewed the circumstances presented in the record. It concluded that "the factors weigh equally as to each side," that mother as "the party resisting an award [had] to prove that such an award would be clearly inappropriate" under Code § 20-146.33, and that mother "did not meet that standard" in this case. This finding, as well as the determination of the amount of "necessary and reasonable expenses" to be awarded to father under Code § 20-146.33(A), were issues for the circuit court, as the factfinder in this case, to decide. Upon our consideration of the entire record here, we conclude that the circuit court did not err in awarding father $55,772 of attorneys' fees and costs for, *inter alia*, litigating the registration issue in the JDR and circuit courts and traveling from Switzerland to Virginia in order to litigate the matter so as to reclaim physical custody of the child. See Code § 20-146.33(A).

### III. CONCLUSION

For the foregoing reasons, we affirm the Fairfax Circuit Court's decision under Virginia's UCCJEA to register the March 15, 2013 foreign custody order entered by Judge Hekimi in Switzerland. We also affirm the circuit court's decision to award father, the prevailing party in the registration litigation, $55,772 in attorneys' fees and costs – representing his expenses

incurred during the protracted registration litigation in the JDR court and in the circuit court that

involved travel between Switzerland and the United States and lodging in Virginia.[6]

Affirmed.

---

[6] In the concluding sentence of his brief on appeal, father asks this Court to "remand this case to the Circuit [C]ourt so that it make a determination of fees and costs for having to defend against this appeal." While father requests such an award of appellate attorneys' fees and costs in the last sentence of his brief, he does not argue that he should receive them under Code § 20-146.33(A) or argue how that statute is applicable to an award of appellate attorneys' fees and costs. Therefore, we do not interpret the last sentence of father's brief as a request for appellate attorneys' fees and costs under Code § 20-146.33(A) specifically. Thus, we need not address and do not address whether Code § 20-146.33(A) would apply to an award of appellate attorneys' fees and costs. Instead, we interpret father's generalized request for an award of his appellate attorneys' fees and costs to be a request made under the ordinary standard for such an award as stated in O'Loughlin v. O'Loughlin, 23 Va. App. 690, 479 S.E.2d 98 (1996). Consistent with the principles stated in O'Loughlin, and upon consideration of the record, we find that the appeal in this matter "addressed appropriate and substantial issues and that neither party generated unnecessary delay or expense in pursuit of its interests." Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004). Accordingly, we deny father's request for a general award of appellate attorneys' fees and costs.