COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Alston and Senior Judge Haley
Argued at Richmond, Virginia


DAE C. KIM

v.        Record No. 0288-16-4

VIRGINIA BOARD OF ACCOUNTANCY

MEMORANDUM OPINION[*]
BY JUDGE RANDOLPH A. BEALES
NOVEMBER 15, 2016


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David S. Schell, Judge

Thomas W. Nesbitt (The Nesbitt Law Firm, PLLC, on briefs), for
appellant.

Anna T. Birkenheier, Assistant Attorney General (Mark R. Herring,
Attorney General; John W. Daniel, II, Deputy Attorney General;
Kristina Perry Alexander, Senior Assistant Attorney General, on
brief), for appellee.


On May 26, 2015, the Virginia Board of Accountancy (the Board) found that Dae C. Kim

(appellant) had violated Code § 54.1-4413.3, Code § 54.1-4412.1, 18 VAC 5-22-150, and 18 VAC

5-22-90(A).  Appellant appealed the Board's determination to the Fairfax County Circuit Court,

which affirmed the Board.  On appeal to this Court, appellant asserts that the circuit court erred in

affirming the Board because the Board failed to adequately explain its findings in writing as

required by Code § 2.2-4019, the Board did not give appellant proper notice of all of the charges

against him or the penalties that could be assessed against him, the Board assessed arbitrary and

capricious penalties against appellant, and the Board wrongfully, as a matter of law, found appellant

to be in violation of 18 VAC 5-22-150.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

On September 18, 2014, Joon Kim, a finance officer from California University of Management & Sciences (CalUMS), filed a complaint against appellant to the Board. After receiving the complaint, the Board issued a notice for an informal fact-finding conference (notice) to appellant. In that notice, the Board explained that appellant was alleged to have violated Code § 54.1-4413.3 (1) – (6). The notice also said, "In its deliberations, the Board may utilize Board Regulations and the Code of Virginia, which govern proceedings of this nature." In the investigative report, which was attached to the notice, the Board listed Code § 54.1-4413.3, Code § 54.1-4412.1, 18 VAC 5-22-150, and 18 VAC 5-22-90 in its summary of allegations. In the notice, the Board also included three potential outcomes of the investigation: first, that Kim could be exonerated; second, that Kim could be assessed a monetary penalty; or third, that Kim could be offered a settlement with "other terms and conditions the Board deems appropriate."

At the informal fact-finding conference (IFFC), the hearing officer, W. Barclay Bradshaw, asked appellant questions about his work as a CPA, his firm, and his audit of CalUMS. Appellant was an individually licensed certified public accountant (CPA) practicing in the firm of Him & Kim, PLLC. Appellant explained that he had been running his company as a single-member professional limited liability company for approximately six and one-half years. His firm was not licensed. Appellant, as a member of Him & Kim, PLLC, performed an audit of CalUMS (located in Fairfax) for the period from July 1, 2012 to June 30, 2013. Appellant told Mr. Bradshaw that he had only performed "one or two, just very rare" audits of his clients' financial statements.

Throughout the hearing, Mr. Bradshaw found a number of problems with appellant's audit of CalUMS's finances – both in the quality of the audit and the fact that appellant

- 2 -

performed the audit without having a firm license as required by law. Later in the hearing, Mr. Bradshaw told appellant,

> I mean, it's scary to think that you were not aware of the Clarity Project. The Clarity Project, a result of that is the auditor's report was totally reformatted. Totally. And everything you have here is the prior version, pre-clarification. And the date of your report of October 14, 2013, would require the new reporting format. So this is a significant non-compliance with our technical standards.

Mr. Bradshaw ultimately concluded, "Okay. Well, this – this does not comply with auditing standards, this audit program. This is woefully deficient. The audit program should be about that thick for any audit. Okay and I'm holding up my fingers to represent about an inch, for the record."

The engagement letter from Him & Kim reads, "As an initial engagement with CalUMS, Him & Kim, PLLC accepts $3,100 fee arrangement, however, CalUMS will be responsible for the fee arising from any peer review over Dae C. Kim, CPA." After reading this aloud, Mr. Bradshaw said, "This looks to me like you had some awareness of the peer review process when you drafted this letter." Appellant said, "Right. But – right, right. But not – not much, in great detail." Mr. Bradshaw responded, "Well, it looks like you had – knew enough to – you should've gotten into it. You should've understood what – what was required under the peer review process to have to go through that."

Joon Kim, the complainant, also testified at the IFFC, saying, "[I]t seems like throughout this process, I feel really scared that he hasn't even follow[ed] any procedure in that way. And I believe that there are more – many CPA's like this. And then . . . I'm kind of scared."

On December 2, 2014, Mr. Bradshaw released his written recommendations. He recommended that the Board find that appellant had violated Code § 54.1-4413.3(4), (5), and (6); Code § 54.1-4412.1; 18 VAC 5-22-150; and 18 VAC 5-22-90(A). He also recommended that

- 3 -

the Board take the following disciplinary action: (1) that Kim be precluded from performing "any services that are restricted to licensed CPA firms until he is licensed by the Virginia Board of Accountancy as a CPA firm"; (2) that appellant "pay a monetary penalty of $10,000 . . . for providing services that are restricted to licensed CPA firms without a valid CPA firm license"; (3) that appellant "pay a monetary penalty of $10,000 . . . for the non-compliance with technical standards issued by the American Institute of Certified Public Accountants (Generally Accepted Auditing Standards) and the Financial Accounting Standards Board (Generally Accepted Accounting Principles)"; (4) that appellant pay $250 for failing to obtain the required amount of Virginia-specific ethics continuing professional education for the reporting period of 2011, 2012, and 2013 and that appellant make up his deficient credits; (5) that appellant pay $250 for failing to obtain the required amount of continuing professional education requirements for the reporting period of 2011, 2012, and 2013 and that appellant make up his deficient credits; and (6) that "any and all CPA firm license applications submitted by [appellant] shall be placed on hold for a period of no less than five years from the entry date of the Order. Upon completion of the five years, [appellant] will be required to come before the Board to demonstrate his competency."

In its final decision, the Board found substantial evidence that appellant violated Code § 54.1-4413.3 (4), (5), and (6); Code § 54.1-4412.1; 18 VAC 5-22-150; and 18 VAC 5-22-90(A). The Board fully incorporated the portion of the IFFC report detailing "Findings of Fact" for each of the four violations. The findings of fact for the violation of Code § 54.1-4413.3 reads, in its entirety, as follows: "Kim violated the Standards of Conduct and Practice of the Code of Virginia by failing to comply with the technical standards issued by the American Institute of Certified Public Accountants (Generally Accepted Auditing Standards) and the Financial Accounting Standards Board (Generally Accepted Accounting Principles)." The Board also directed that appellant's "*individual* CPA license shall be placed on suspension for a period of no less than

five (5) years . . . . Upon completion of the five year period, [appellant] will be required to come before the Board to demonstrate his competency prior to the consideration of any application(s) for reinstatement of CPA licensure in Virginia." (Emphasis added).

## II. ANALYSIS

### A. Standard of Review

Code § 2.2-4027 authorizes judicial review of an agency decision. "The duty of the court with respect to the issues of law shall be to review the agency decision de novo." Code § 2.2-4027. Issues of law for appellate review pursuant to Code § 2.2-4027 include "(i) accordance with [a] constitutional right, power, privilege, or immunity, (ii) compliance with statutory authority, . . . (iii) observance of required procedure where any failure therein is not mere harmless error, and (iv) the substantiality of the evidentiary support for findings of fact." Code § 2.2-4027.

However, "[i]n the context of factual issues, Code § 2.2-4027 mandates that the court 'take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted.'" Harrison v. Ocean View Fishing Pier, 50 Va. App. 556, 573, 651 S.E.2d 421, 429 (2007) (quoting Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988)).

### B. Notice

#### 1. *Notice of Charges*

Appellant argues that he was not on notice of all four charges that he was ultimately found to have violated – i.e., violating Code § 54.1-4413.3, Code § 54.1-4412.1, 18 VAC 5-22-150 and 18 VAC 5-22-90(A).

The IFFC notice specifically referenced a potential violation of Code § 54.1-4413.3. Thus, there can be no question that appellant was on notice of that charge. The notice informed

appellant that the Board reserved the right to look at the Code and its regulations in determining the extent of appellant's violations. In addition, the investigative report, which was attached to the notice, specifically referenced Code § 54.1-4413.3, Code § 54.1-4412.1, 18 VAC 5-22-150, and 18 VAC 5-22-90 in its "summary of allegations" section. Consequently, appellant was also on notice that he could be found in violation of Code § 54.1-4412.1, 18 VAC 5-22-150, and 18 VAC 5-22-90(A). Moreover, at the beginning of the IFFC, appellant's counsel specifically represented to Mr. Bradshaw, "What we primarily have been prepared to address are the summary of allegations that are *in the investigative report*." (Emphasis added). Therefore, the record demonstrates that appellant was given proper notice and that appellant actually knew about all of the alleged statutory and regulatory violations.

## 2. *Notice of License Suspension*

Appellant also argues that he was not on notice that his CPA license could be suspended, which violated his due process rights. A state actor's notice must be reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Oak Hill Nursing Home, Inc. v. Back, 221 Va. 411, 417, 270 S.E.2d 723, 726 (1980); see also McManama v. Plunk, 250 Va. 27, 34, 458 S.E.2d 759, 763 (1995) ("Procedural due process guarantees that a person shall have reasonable notice and opportunity to be heard before any binding order can be made affecting the person's rights to liberty or property."). In this case, neither party contests the issue of whether appellant had a protected property interest in his CPA license. The Board argues that appellant *was* on notice that his CPA license could be suspended because the Board had the statutory authority to suspend his license. See Code § 54.1-4413.4.

In the notice, which appellant received before the IFFC, the Board included only three potential outcomes: first, that Kim could be exonerated; second, that Kim could be assessed a

- 6 -

monetary penalty pursuant to Code § 54.1-4413.4; or third, that the Board could "[o]ffer a Final Order with other terms and conditions the Board deems appropriate."

We find that the Board, in listing only three potential outcomes, did not put appellant on notice that his individual CPA license might actually be placed on suspension by simply saying "other terms and conditions the Board deems appropriate."

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information[.]

Oak Hill, 221 Va. at 417, 270 S.E.2d at 726 (quoting Mullane v. Central Hanover Tr. Co., 339 U.S. 306, 314-15 (1950)).

A reasonable person, reading the three possible outcomes offered by the Board in its notice, easily could have concluded that those three options were an *exhaustive* list of the possible outcomes that appellant could expect. This becomes especially obvious when considering the fact that Code § 54.1-4413.4 includes *both* monetary penalties and license suspension penalties. Thus, when the notice included *only* a reference to monetary penalties, the reader could well have reasonably concluded that, of all of the remedies available to it in Code § 54.1-4413.4, the Board would actually only impose *monetary* penalties on appellant.

In any event, the notice did not mention any possibility of suspending or revoking appellant's individual CPA license, and there was no mention of suspending appellant's individual CPA license during the IFFC proceedings. Furthermore, Mr. Bradshaw certainly did not recommend to the Board that appellant's CPA license be suspended. In its final order, the Board – on its own and without notifying appellant that his CPA license might be suspended or revoked and without allowing appellant to present evidence on this point – suspended appellant's

- 7 -

individual CPA license for at least five years. Appellant would have to "come before the Board to demonstrate his competency" in order for the Board to consider reinstating his individual CPA license after the minimum five-year suspension had run.

This Court holds that appellant was properly on notice of all four of the statutory and regulatory violations, but that appellant was not on notice that his individual CPA license might be suspended because the Board's notice did not list an individual CPA license suspension as a potential penalty to which appellant could be subject. Appellant was not even given a meaningful opportunity to object to the imposition of such a penalty because the issue was not raised at the IFFC or even in Mr. Bradshaw's recommended penalties to the Board. For all of these reasons, we reverse the Board's determination that appellant's individual CPA license be suspended.[1]

### C. Factual Basis for the Board's Final Decision

#### 1. *Written Facts to Support a Violation of Code § 54.1-4413.3*

Appellant argues that his violation of Code § 54.1-4413.3 should be reversed because the Board failed to properly describe in writing its factual or procedural basis for concluding that appellant violated Code § 54.1-4413.3(4), (5), and (6), as required by Code § 2.2-4019(A). Appellant argues that neither the Board's order (which incorporates the "factual findings" of the IFFC report) nor the IFFC report identifies with specificity *which* accounting standards appellant violated.

Code § 2.2-4019 requires that a party to an informal administrative hearing "be informed, briefly and generally in writing, of the factual basis for an adverse decision . . .". Code

---

[1] This is certainly not to say that the Board could not have suspended appellant's CPA license in this case, but rather that appellant was simply not given the proper notice here that his individual license to be a Certified Public Accountant could well be suspended or revoked in this hearing.

§ 2.2-4019(A)(v). The Board's written findings of fact are as follows: "Kim violated the

Standards of Conduct and Practice of the Code of Virginia by failing to comply with the

technical standards issued by the American Institute of Certified Public Accountants (Generally

Accepted Auditing Standards) and the Financial Accounting Standards Board (Generally

Accepted Accounting Principles)." The Generally Accepted Auditing Standards applicable to

audits of financial statements for periods ending on or after December 15, 2012 and their

interpretive guidance alone amount to over 600 pages of text. See AICPA, Clarified Statements

on Auditing Standards,

http://www.aicpa.org/Research/Standards/AuditAttest/Pages/clarifiedSAS.aspx (October 18,

2016).

> [F]indings of basic fact must reveal the Board's analysis of the evidence and its determination therefrom regarding the various specific issues of fact which bear on the particular claim. . . . [T]he specific findings of basic fact must reveal the Board's determination of various relevant sub-issues and factual disputes which, in their sum, are dispositive of the particular claim or ultimate factual question before the Board. The findings must be specific enough to provide the reader with an understanding of the Board's reasons, based on the evidence, for its finding of *ultimate* fact.

Goodyear Tire & Rubber Co. v. Pierce, 5 Va. App. 374, 384, 363 S.E.2d 433, 438-39 (1987)

(alterations in original) (quoting with approval Perez v. United States Steel Corp., 426 N.E.2d

29, 33 (Ind. 1981)).[2] In this case, the Board's factual findings do not reveal the Board's

reasoning. The written findings of fact do not give appellant even a general idea *why* the Board

ultimately concluded that appellant failed to comply with the technical standards. This is not to

say that the record does not support such a conclusion, but rather that the Board did not reference

---

[2] In Pierce, this Court analyzed a different but similar standard to that in Code § 2.2-4019 in a Workers' Compensation appeal and noted, "The findings must be specific enough to provide the reader with an understanding of the Board's reasons, based on the evidence, for its [legal conclusion]." 5 Va. App. at 384, 363 S.E.2d at 439.

*any* facts in writing about any specific violations that would support its conclusion. Accordingly, we hold that only generally referencing a violation of the Generally Accepted Auditing Standards and the Generally Accepted Accounting Principles does not give appellant an actual understanding of the Board's grounds for finding that he violated Code § 54.1-4413.3, and it effectively denies appellant his "right to intelligently marshal facts in the agency record supportive of h[is] position . . ." on appeal. Va. Ret. Sys. v. Cirillo, 54 Va. App. 193, 203, 676 S.E.2d 368, 373 (2009).

## 2. *Error Not Harmless*

Finally, it is well-settled that this procedural error is not harmless error. See id. ("We conclude the failure of VRS to inform Cirillo, 'briefly and in writing, of the factual or procedural basis' of the rationale for its decision is not 'mere harmless error.'"); see also Harrison, 50 Va. App. at 575, 651 S.E.2d at 430 ("Failure to make such [factual] findings is not harmless error."). As the United States Supreme Court has said:

> [A] simple but fundamental rule of administrative law . . . is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which [the legislature] has set aside exclusively for the administrative agency.
>
> [A]n important corollary of the foregoing rule . . . [is:] If the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable. It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive.

Harrison, 50 Va. App. at 574-75, 651 S.E.2d at 430 (alterations in original) (quoting SEC v. Chenery Corp., 332 U.S. 194, 196-97 (1947)).

### 3. *On Remand –Reversal or Dismissal*

Appellant argues that his violation of Code § 54.1-4413.3 should be reversed and *dismissed* as opposed to simply *remanded*, because appellant would not get a fair trial on remand.[3] Appellant argues that this situation is more like Virginia Board of Medicine v. Fetta, 244 Va. 276, 280, 421 S.E.2d 410, 412 (1992), as opposed to Harrison, in which this Court only ordered remand for further fact-finding. This case does not dictate a different result from Harrison, in which the Court ordered remand for proper written factual findings.

In Fetta, the Supreme Court noted, "[T]he flawed procedure at the evidentiary hearing has tainted the fact-finding process." Fetta, 244 Va. at 281, 421 S.E.2d at 413 (finding that "the presence of the four Board members at the evidentiary hearing, and their subsequent participation in the full Board's deliberations, could have had a significant impact on the ultimate decision so as to undermine the . . . factual findings . . ."). Appellant has not pointed to any flawed *procedure* that would impact the Board's impartiality when making factual findings. See also Loudoun Hosp. Ctr. v. Stroube, 50 Va. App. 478, 496-97, 650 S.E.2d 879, 888-89 (2007) (finding that there was no clear showing of prejudice or plain showing that the agency's conclusions were determined by improper ex-parte evidence and that a *remand* was sufficient to cure the "taint" of the ex-parte communications made to the hearing administrator and not disclosed to appellant).

Accordingly, we reverse the trial court's decision and remand for the Board to describe in writing what factual basis it has, if any, for its adverse decision, pursuant to Code § 2.2-4019.

---

[3] Appellant also argues that his violations of Code § 54.1-4412.1, 18 VAC 5-22-150, and 18 VAC 5-22-90(A) should be simply dismissed rather than remanded as well. However, this Court need not address that issue because we affirm the Board's determination on each of those charges.

Likewise, the $10,000 penalty that the Board assessed for this violation is remanded for the Board's reconsideration.

### D. Sufficient Evidence of a Violation of 18 VAC 5-22-150

Appellant argues that the record does not support the Board's conclusion that appellant violated 18 VAC 5-22-150 because that regulation is directed at *compliance with* a monitoring program, not *enrollment in* one. As appellant argues, the Board made the factual finding that appellant never held a CPA firm license, and, therefore, he could not have been subject to compliance with a monitoring program that is required only for firms that are already licensed.

The Board argues that appellant – an individually-licensed CPA who provided attestation services through his unlicensed, single-member professional limited liability company – was required to obtain firm licensure *and* engage in peer review monitoring in compliance with Code § 54.1-4412.1(D) and 18 VAC 5-22-150 in order to provide such auditing services. Appellant was required to obtain firm licensure if he wished to perform an audit, because only licensed firms can provide such services. See Code § 54.1-4412.1. Consequently, as the Board argues, appellant violated 18 VAC 5-22-150 when he performed an audit but failed to engage in peer review programs at all. Code § 54.1-4412.1(D)(6) states, "The firm shall be enrolled in the applicable monitoring program of the American Institute of Certified Public Accountants or its successor, or in another monitoring program . . . that is approved by the Board." In turn, 18 VAC 5-22-150 states (in relevant part), "In order to comply with subdivision D 6 of § 54.1-4412.1 of the Code of Virginia, a firm shall comply with all components of the monitoring program in which it is enrolled . . . ."

The Board made a factual finding that appellant was *not* enrolled in a peer review monitoring program. Code § 54.1-4412.1(D)(6) is the mechanism by which firms are required to enroll in a monitoring program, and 18 VAC 5-22-150 provides additional enrollment standards.

- 12 -

Thus, if appellant failed to enroll his firm in a monitoring program, which he was required to do as the sole member of a firm providing an audit, then appellant also necessarily failed to comply with 18 VAC 5-22-150. Consequently, we hold that the Board properly found appellant in violation of 18 VAC 5-22-150.

### E. Proper Penalties

Appellant argues that he was deprived of his right to due process because the Board's suspension of his license and assessment of monetary penalties was arbitrary and capricious.[4]

The Board argues in response that it is authorized to impose penalties on licensees who violate applicable statutes or regulations (see Code § 54.1-4413.4) and that it was acting in its consumer protection role by assessing the penalties against an individual who performed poor work while unlicensed to do such work.

Appellant was assessed a $10,000 monetary penalty for violating Code § 54.1-4412.1 when he performed an audit without firm licensure and failed to engage in peer review monitoring. The Board is entitled to impose penalties on individuals who violate the applicable statutes and regulations. "Penalties the Board may impose consist of: . . . Imposing a monetary penalty up to $100,000 for each violation of the provisions of this chapter or regulations promulgated by the Board[.]" Code § 54.1-4413.4 (emphasis added). Appellant argues that the Board's $10,000 penalty, while within the Board's statutory authority to assess, was still

---

[4] Because we reverse the circuit court's determination that the Board included sufficient written factual findings as required by Code § 2.2-4019 to support a violation of Code § 54.1-4413.3, we need not consider whether, as appellant alleges, the $10,000 penalty assessed for appellant's violation of Code § 54.1-4413.3 is arbitrary and capricious. The Board, after making appropriate fact-finding, can decide whether or not to reinstitute the penalty.

Likewise, because we reverse the Board's suspension of appellant's CPA license as appellant was not properly on notice that it might be placed on suspension, we need not consider whether such action was arbitrary and capricious.

arbitrary and capricious because the amount of the penalty was disproportionate to the nature of the single offense committed by appellant.

"Actions are defined as arbitrary and capricious when they are 'willful and unreasonable' and taken 'without consideration or in disregard of facts or law or without determining principle.'" School Bd.v. Wescott, 254 Va. 218, 224, 492 S.E.2d 146, 150 (1997) (quoting Black's Law Dictionary 105 (6th ed. 1990)). Appellant conceded that he performed this audit without proper firm licensure, and had done "one or two" in the past. Furthermore, throughout the course of the hearing, appellant regularly admitted to vast ignorance about his professional obligations and that he was not involved in peer review monitoring. Moreover, appellant included language in his engagement letter to CalUMS that caused the hearing officer to conclude that appellant knew about the requirement for a firm to engage in peer review monitoring (as required by Code § 54.1-4412.1) and simply disregarded the requirement. In addition, Joon Kim, the representative for CalUMS, testified, "[I]t seems like throughout this process, I feel really scared that he hasn't even follow[ed] any procedure in that way. And I believe that there are more – many CPA's like this. And then . . . I'm kind of scared." Mr. Bradshaw recognized the significance of Joon Kim's remark when he responded, "Well, it concerns the Board for you or any member of the public to be afraid of our profession." These facts support the Board's decision to assess a $10,000 penalty against appellant. As such, this Court cannot say that the Board's penalty was assessed without due consideration of the facts. We find that the Board did not act in an arbitrary and capricious manner when it imposed a $10,000 penalty for violating Code § 54.1-4412.1.

## F. Reasonable Attorney's Fees and Costs on Appeal

Under the Administrative Process Act, a litigant is entitled to recover "reasonable costs and attorney fees if such person substantially prevails on the merits of the case *and* (i) the

agency's position is not substantially justified, (ii) the agency action was in violation of law, or (iii) the agency action was for an improper purpose, unless special circumstances would make an award unjust." Code § 2.2-4030(A) (emphasis added). While a litigant does not have to prevail on every issue raised, appellant must obtain a judgment in his favor on a significant issue in dispute. Hollowell v. Virginia Marine Resources Comm'n, 56 Va. App. 70, 86, 691 S.E.2d 500, 508 (2010). In this case, appellant raised several other important issues on which he did not prevail on appeal. For example, we have found, contrary to his arguments, that appellant had notice of all of the charges against him (with the exception of the suspension of his individual CPA license), that he was in violation of Code § 54.1-4412.1 and 18 VAC 5-22-150 by doing the audit of CalUMS without having the required firm license to do so (and by also failing to enroll in peer review monitoring while doing so), and that the monetary penalty for this violation of $10,000 was not arbitrary and capricious. Thus, we hold that appellant is not entitled to attorney's fees and costs on appeal.

### III. CONCLUSION

For the foregoing reasons, we reverse the circuit court's determination that the Board complied with Code § 2.2-4019 and remand to the circuit court for remand to the Board with instructions to comply with the requirements of Code § 2.2-4019 concerning the necessity of having written specific findings to support its decision. On the issue of penalties, we reverse the Board's decision to suspend appellant's CPA license without his having received proper notice that his individual CPA license was at risk of being suspended or revoked. We remand the Board's decision to assess a $10,000 monetary penalty against appellant for "noncompliance with technical standards issued by the American Institute of Certified Public Accountants . . ." in order for the Board to determine if such a penalty is appropriate once it issues a decision on remand as to what specific technical standards, if any, appellant violated. We affirm the Board's

- 15 -

decision to assess a $10,000 monetary penalty against appellant for violating Code

§ 54.1-4412.1, and we affirm the Board's determination that appellant violated 18 VAC

5-22-150.  Finally, this Court holds that appellant is not entitled to attorney's fees and costs on

appeal.

Affirmed in part, and
reversed and remanded in part.
